[L. A. No. 4491. Department Two.—December 30, 1918.]

## ISAAC C. PARKS, Respondent, v. JESSE PARKS, Appellant.

DEED—INTEREST OF GRANTEE—EVIDENCE.—The real nature of the transaction concerning property conveyed, the true intent and purpose moving parties in taking a conveyance in their joint names, or in that of one of them, can be investigated and determined except where in good faith interests of third parties have intervened and would be injuriously affected; and therefore, it may be shown that the taking of a conveyance in the name of the grantee, or one of them, was a mistake, or that it was a matter merely of convenience, or as security for a loan, or was taken under such circumstances as created a resulting trust or trust of some other character.

PARTITION—EXTENT OF OWNERSHIP OF PARTIES—TRANSACTION CONCERNING PURCHASE—INTEREST OF GRANTEES—EVIDENCE.—In this action for a partition of a tract of land wherein the plaintiff asserted an equal undivided ownership therein in himself and the defendant, and the defendant claimed ownership to three-fourths, it is held that while the evidence shows that the contract for the purchase of the property was made with the vendor by the mother of the parties and the defendant and years after a deed was made to both of them, yet it was never the intent of the grantees, or either of them, that the defendant should acquire legal title to any portion of the property,

and that under the will and decree of distribution made in the estate of the mother, the parties succeeded each to an undivided one-half of the property.

APPEAL from a judgment of the Superior Court of Riverside County, and from an order denying a new trial. F. E. Densmore, Judge. Affirmed.

The facts are stated in the opinion of the court.

John M. Clayton, for Appellant.

George A. French and Miguel Estudillo, for Respondent.

LORIGAN, J.—Plaintiff and defendant are brothers and sons of Frances E. Parks, who died intestate in December, 1912, leaving considerable estate. Her personal property she left to other of her children and devised to the plaintiff and defendant, in equal shares, all her real property, which thereafter was inventoried in her estate as consisting of six hundred acres of land in Riverside County—referred to in the evidence as section 29—and subsequently distributed in said estate to plaintiff and defendant in equal shares. Nearly a year after distribution plaintiff brought this action for a partition of said six hundred acres of property, asserting equal undivided ownership therein in himself and defendant. In his answer, however, defendant set up a claim of ownership to three-fourths of the property, and the extent of ownership between the parties is the only question involved in the case. The finding of the court was that each of the parties was the owner of an undivided one-half of said property and awarded a judgment of partition, from which judgment and an order denying his motion for a new trial defendant appeals.

The facts in this case are few and simple. The land in question was originally a part of what were known as "railroad lands" of the Southern Pacific Railroad Company and about 1889—the exact date not shown—a contract for the purchase of said section 29 for three thousand dollars was negotiated between said Railroad Company and Mrs. Frances E. Parks, said mother of the parties. What the terms of payment were to be is not shown other than it appears they were to be made in two installments. A written contract of purchase from the Railroad Company was made and taken in the

joint names of Mrs. Parks and the defendant, Jesse Parks, and of the first payment made on the purchase price of the land said Jesse Parks advanced $250, the rest, which must have amounted to some one thousand dollars, being paid by his mother. Mrs. Parks then went into possession and control of the property, though it was used as a common pasturage for the stock of all the members of the family. The second and final payment on the land to the Railroad Company, which exceeded some one thousand eight hundred dollars, was made about 1893 by Mrs. Parks alone. Long prior to said last payment Mrs. Parks had repaid to Jesse Parks and he had accepted the $250 which he had handed to his mother when the contract with the Southern Pacific Railroad Company for the purchase of the land was originally made. Before this repayment to him Jesse Parks had been assisting in the payment of the taxes on the land, but afterward he made no further advancement for that purpose, and for twenty years prior to her death, Mrs. Parks, in addition to having full charge and control of the property, had alone been paying the taxes on it. Although the final payment on the property was made to the Railroad Company about 1893 no deed to the land was made until about April 9, 1897 (a patent to the land not having probably been issued by the United States to the Railroad Company until about that date), and the deed which was then made by said company ran to Frances E. Parks and the defendant, Jesse Parks, the original parties in the contract of purchase from the Railroad Company. This was the situation in which the title stood at the time of the death of Mrs. Parks and the entry of the decree of distribution in her estate, and it is quite evident therefrom the attitude which each party takes in this litigation. Plaintiff claims that his mother was in legal effect the sole owner of the entire tract of six hundred acres of land at her death and that he became the owner of an undivided one-half thereof through her will and the decree of distribution in her estate. The claim of appellant is that he is the owner of an undivided three-fourths of the six hundred acres—an undivided half under the deed from the Railroad Company to his mother and himself, and an undivided one-quarter in addition under the decree of distribution of the undivided half-interest of his mother to himself and the plaintiff.

The trial court obviously concluded from the evidence that the property belonged to Mrs. Parks alone at the time of her death, notwithstanding the deed from the Railroad Company to appellant, her son Jesse, and herself, and that the only title acquired by both parties to this action was derived solely under the will and decree of distribution in the estate of their mother, and we are satisfied that this conclusion of the trial court was fully warranted by the evidence in the case, independent of any consideration of the question of the conclusiveness of the decree of distribution in the estate of the mother on title to the property, a matter asserted by respondent and denied by appellant, but a question which we find unnecessary to discuss or pass on.

There is, it is true, evidence in the case of a deed from the Southern Pacific Railroad Company to Mrs. Parks and the appellant, Jesse Parks, to the six hundred acres in question. The existence of this deed in his favor at the time of the death of his mother was *prima facie* evidence of title in him. But it was not conclusive on the question of title. The general rule is that the real nature of the transaction concerning property conveyed, the true intent and purpose moving parties in taking a conveyance to property in their joint names, or in that of one of them, can be investigated and determined unless where in good faith interests of third parties have intervened and would be injuriously affected. It may be shown that the taking of a conveyance in the name of the grantee, or one of them, was a mistake, or that it was a matter merely of convenience, or as security for a loan, or was taken under such circumstances as created a resulting trust or trust of some other character. Such an inquiry was the main feature in this case and the evidence shows quite satisfactorily, we think, that while, in fact, the contract for the purchase of the property was made with the Railroad Company by appellant and his mother and years afterward a deed made to both of them, that it was never the intent of appellant or his mother that appellant should acquire a legal title to any portion of said property and that appellant, though a party to the conveyance, never asserted or claimed any interest in it until long after the death of his mother and the settlement of her estate, and then only when respondent brought this action for a partition of the property. Even then his claim under the deed

from the Railroad Company is not a definite and emphatic one, but rather of a hesitating and indefinite character.

Considering now the evidence in the case. It appears from the record that the appellant is the only one who could speak fully of the arrangement, if any, between his mother and himself relative to this land and their intentions respecting it, and his testimony is not only meager but, as to those matters, as well as in other respects, unsatisfactory. We get no information from him how he became connected with his mother as a party to the original contract with the Railroad Company; how, if he was to acquire one-half of the property, his payment of $250 was but one-twelfth of the purchase price; whether the $250 was not really a loan to his mother to be used by her with her own larger funds in making the first payment on the land; how she came to return him the said $250, or why he accepted it if it was a part of the purchase price and not a loan, and why right thereafter he ceased advancing anything further toward payment of the taxes. In fact, he does not undertake to enlighten us on those important matters at all. As to the deed from the Railroad Company, all the evidence we have on that subject is that Mrs. Parks paid the entire purchase price for the property, having refunded to appellant the $250 he advanced, and that the deed was made by the Railroad Company some seven years after final payment and ran—the same as the contract did—to both Mrs. Parks and the appellant. We stated that the claim of appellant under this deed was not explicit and definite. In that respect it appears from his testimony that he was making a claim in this case that his mother had made a deed in his favor at some time to all of section 29; that she promised to give him the whole section, and that he had seen a deed made by her years before her death whereby she had done so. His own assertion of having seen such a deed or of such a promise having been made is all we have on the subject. No such deed was produced. No member of the family or anyone else seems to have heard of such an instrument, and certainly no deed was ever delivered by his mother to appellant. Having testified as to the return to him by his mother of the $250 advanced by him when making the original payment on the purchase price of the land he was asked by the court: "Q. How do you claim to own one-half interest in this if you got your money back? A. Well, I claim I seen a deed that mother

gave me of all of section 29—600 acres. . . . I claim the
property because I seen the deed she gave me of all the land.
I claim it on the railroad deed; the railroad deed and then
this other deed that is now missing."

The only reasonable view to be taken from the evidence as
far as the payment of the $250 by appellant is concerned, and
the. incorporation of his name in the contract of purchase,
and the view doubtless taken by the trial court, is that the
payment of the $250 was only a loan by appellant to his
mother, and the insertion of his name in the contract was
made simply as evidence thereof and to secure its repayment.
The payment for the property might not be consummated for
some years, and in case anything should happen to the mother
during that time and a question should arise among her heirs
as to payments made and interests in the property, the right
of appellant would be declared. That this money was not to
be deemed a payment by appellant as a purchaser of the
property with his mother is clear from the fact that she paid
him back his advancement and he accepted it without any
protest or question but that its repayment to him was the
proper and expected thing. His conduct in that respect is
inconsistent with the idea of his being a purchaser with his
mother. When he got his money he considered himself out
of the transaction. He thereafter paid no taxes and he as-
sumed no control over the property, nor did he assert or claim
any interest in it until this action was commenced.

There is less room for the assertion by him of real actual
ownership under the deed. It is true that it gave him a paper
or record title, but that is all he can assert. His real interest
under the deed would not be any broader than his interest
might have been under the contract which the deed followed.
He never paid any valuable consideration, or, in fact, any
consideration at all, for the title under either the contract or
deed. In fact, he does not claim that he paid any, asserting
practically as to the deed that by allowing it to be made in
his name his mother intended thereby to make him an ad-
vancement to the extent of one-half of the property. It does
not appear that it was through any direction of the mother
that the deed was made by the Railroad Company to both her-
self and the appellant. It will be observed that the deed was
not made until several years after the final payment for the
land, and was doubtless issued by the Railroad Company as

soon as it obtained a patent to the land. In doing so it followed the contract as it would have doubtless done anyhow unless there was some assignment showing to it that appellant had disposed of his interest under the contract to his mother. It is true that it would have been more regular for the mother to have had the deed issued to herself. The only effect, however, of a failure to do this was, under the circumstances, to vest in appellant an apparent title to an undivided interest in the property. This was the apparent effect, but the legal effect was to make him a trustee for his mother under the familiar doctrine of a resulting trust, which occurs where the consideration for the purchase of real property is paid by one person and the title thereto is taken in the name of another. (Civ. Code, sec. 853.) All the purchase price of this property was paid by the mother and the legal title to half of it taken in the name of appellant. This was the simple transaction, and this being all that was shown in the matter, the principle of a resulting trust applies under which the apparent title which appellant held was held solely in trust for his mother.

While appellant does not question the rule of resulting trusts, he contends that it should not apply here because the fact of having the deed run to both his mother and himself must be treated as disclosing an intention on her part to make a gift to him of one-half the property in the nature of an advancement. But it does not appear that she had the deed made to him. It was doubtless simply made by the Railroad Company after it received its patent running to the parties appearing on the original contract of purchase. The most that appears is that the mother let it stand that way. There is no evidence in the case warranting any inference that the mother had a greater affection for the appellant than for her other children, or that his circumstances of life were such that an advancement to him above her other children might naturally be expected from her, nor is there evidence of anything he ever did with respect to the property, or for or on behalf of his mother or her interests, which would prompt her to treat him with more consideration than her other children. Nor did the facts that she paid him back his money, never demanded a conveyance from him after the making of the deed by the Railroad Company, or bring suit to quiet title or have a trust declared, establish the advancement theory.

The mother knew the true fact as did the appellant.   Both knew that appellant had no real interest in this property, as did also the rest of the family.   The family seem to have lived in entire harmony, the mother having confidence in all her children.   She, if she ever gave the matter a thought, rested content that appellant would make no claim under a conveyance which, while it purports to give him an interest in the property, in truth did not do so, a fact which he recognized in her lifetime by never making any claim of interest under it.   It is not at all an uncommon thing for parents who repose that confidence in their children to fail to take every precaution with respect to their property which may obviate subsequent disputes among the heirs.   It does, however, sometimes occur.

From these considerations we are satisfied that the trial court was warranted in concluding, notwithstanding the conveyance from the Railroad Company to appellant and his mother, that in effect the real and true title to the property, both equitable and legal, was vested in Mrs. Parks at the time of her death, and that by her will and the decree of distribution in her estate, and solely thereby, appellant and respondent succeeded each to an undivided one-half of section 29, or three hundred acres each, and that the court properly entered a judgment of partition.

The judgment and order appealed from are affirmed.

Melvin, J., and Wilbur, J., concurred.