[S. F. No. 9736. In Bank.—April 21, 1923.]

E. E. BUELL, Respondent, v. R. L. BUELL, as Administratrix, etc., Appellant.

[1] TRUSTS—RESULTING TRUST—PAYMENT.—Ordinarily, when a transfer of real property is made to one person and the consideration therefor is paid by another, a trust is presumed to result in favor of the person by or for whom such payment is made.

[2] ID.—ACTION TO IMPRESS TRUST — FINDINGS — EVIDENCE.—In an action by a mother against the surviving widow and administratrix of the estate of her deceased son to impress a trust on certain property, referred to as the garage property, where the find-

ings show that said garage property was received in the son's name in exchange for an equity in a contract of purchase held by the mother in her own name, that said equity in said contract was obtained by means of a conveyance by the son to the vendors therein of other property, which belonged to the mother, with the understanding between mother and son that the title to the property, which was the subject of the contract of purchase, should be taken by and vest in the mother, and such findings were supported by the evidence, the trial court was justified in impressing a trust on the garage property in favor of the mother.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Everts, Ewing & Wild and J. R. Fitch for Appellant.

L. N. Barber and W. N. Gilliam for Respondent.

KERRIGAN, J.—This is an action brought by the plaintiff against the defendant to obtain a judgment impressing a trust on certain property in Fresno County. The court granted the relief prayed for and the defendant appeals from the judgment.

The plaintiff is the mother of E. S. Buell, deceased, and the defendant is his surviving widow and the administratrix of his estate. The plaintiff had entered into a contract for the purchase of certain real estate referred to in the record as the Columbia Colony property; and her equity in this property, it appears, was given in exchange for a one-third interest in certain property in the town of Reedley, referred to as the Reedley garage, the deed to which upon the consummation of the exchange was taken in the name of the deceased. It appears that all of the consideration which had been paid upon the contract for the purchase of the Columbia Colony property was in the form of the conveyance by the deceased of property standing in his name valued at the sum of $2,800. It is, therefore, contended by his administratrix that he having furnished this consideration, the plaintiff must be deemed to have held the contract as trustee for him, and that when he traded said property for the Reedley garage he had the right to take title thereto in his

own name, and that he was the owner thereof at the time of his death.

[1] Passing the proposition as contended for by plaintiff that the doctrine of a resulting trust does not apply to an executory contract of sale (*Green* v. *Drummond,* 31 Md. 71 [1 Am. Rep. 14]), we agree with the defendant that ordinarily when a transfer of real property is made to one person and the consideration therefor is paid by another, a trust is presumed to result in favor of the person by or for whom such payment is made. (Sec. 853, Civ. Code.) [2] But in the present case the evidence is ample to sustain the findings of the trial court that the property standing in the name of the deceased and which furnished the consideration for the contract of purchase of the Columbia Colony property belonged to the plaintiff, and that the same was conveyed to the vendors of the Columbia Colony property with the understanding between the plaintiff and the deceased that it should be in settlement of the account between the parties, and that the title to the Columbia Colony property should be taken by and vest in the plaintiff. Under these circumstances it cannot be said that the property in litigation was held in trust by the plaintiff for her son.

The findings, in part, are as follows: The contract for the Columbia Colony property was executed by the plaintiff December 20, 1918, by which the vendors thereof agreed to sell it to the plaintiff for the sum of $8,000, $2,800 of which was paid at the time of the execution of the contract, "and that all right, title, interest and equity of the purchaser thereunder was and at all times hereinafter mentioned remained the property of plaintiff. That neither E. S. Buell, now deceased, nor his estate, had any right, title or interest therein or thereto," and the court further finds that the exchange for the Reedley garage property was negotiated by defendant's intestate at the request of plaintiff and as her agent, and that the title to this property was taken by him against her will and without her knowledge or consent. The court then finds that the first payment of $2,800 on the Columbia Colony property was made by defendant's intestate but "was so paid for the use and benefit of the plaintiff and under and in pursuance of an agreement between the plaintiff and said E. S. Buell that the property so purchased should be her property." The court

then makes a specific finding of the probative facts regarding the consideration for this payment to the effect that plaintiff had conveyed certain real property to E. S. Buell, her son, without consideration, who thereupon promised that he would exchange it for other property to be conveyed to plaintiff at her request; that for more than three years immediately preceding the execution of the contract for the purchase of the Columbia Colony property he had been acting as plaintiff's confidential business agent and adviser, and in the course of his transactions in that capacity had acquired without plaintiff's knowledge certain other property which the plaintiff claimed should rightfully have been received by her; that the property conveyed by E. S. Buell to the vendors of the Columbia Colony property had been obtained by him through a series of exchanges for which the original consideration was property of the plaintiff, together with the sum of $300 belonging to said E. S. Buell, and that in said exchanges Buell had also received and retained without plaintiff's knowledge or consent the sum of $1,260.

The numerous transactions between the plaintiff and her son, all of which have an important bearing on the issues here and which tend to support the findings of the court are correctly stated in plaintiff's brief. They are substantially as follows:

In the year 1916 plaintiff was the owner of certain real property in Fresno County, known as the Jensen ranch, and her son was engaged in business as a real estate broker in the city of Fresno. At this time he claimed that the plaintiff had verbally given him a half interest in this ranch in return for services rendered to her, which she, however, denied. In that year she purchased property known as LeGrand ranch, giving as part payment therefor the Jensen ranch. She then entered into a contract, negotiated by her son, to sell LeGrand ranch for a certain cash payment, receipt of which was acknowledged by the contract, and $6,000 in subsequent installments, but consented to receive in lieu of the cash payment a lot in Maricopa and forty acres of land in Texas. In this connection there was conveyed to the son without his mother's knowledge or consent some lots in Seattle and what is termed the Robinson tract property, and he also had the deed to the Texas property made in his own name without her permission. This latter fact she discovered a short time

after the transaction, but knew nothing about the Robinson tract property until much later. She demanded that he surrender the Texas property to her, in satisfaction of which demand he arranged an exchange in which the plaintiff received a ranch in Madera County, for which she conveyed certain property and her son conveyed what is known as the Belmont addition property which, together with the Duncan's addition property, he had acquired for the Texas land. About this time the son invested $300 in a local transportation line, from which, by a series of exchanges, he obtained a Hudson automobile. After borrowing $300 from the plaintiff to redeem this car from foreclosure—which amount was never repaid—he carried on a further series of land exchanges in which he used this car, together with the Duncan's addition and Robinson tract properties. In March, 1918, the plaintiff conveyed to her son lots referred to as Long Brothers' addition lots and a ten-acre ranch upon his oral undertaking to exchange them for her. He exchanged the last-mentioned land for property in Dinuba, and without her knowledge or consent mortgaged the Long Brothers' addition lots for $250, which he appropriated to his own use. He then exchanged these lots subject to the mortgage, together with property previously held by him for her, and acquired Fairmont addition and Acacia Park lots. He had already extracted from the series of exchanges $800 in cash and a $200 crop mortgage, which he cashed for his own benefit. He then mortgaged the Fairmont addition property for $210, which he also appropriated. The plaintiff in the meantime had been insisting that her son perform his agreement with regard to the property she had deeded to him. In November, 1918, he negotiated the purchase of the Columbia Colony property, a contract concerning which was executed by the plaintiff and the vendors, and the son executed in favor of the latter two deeds, one conveying the Dinuba property and the other the Fairmont addition and the Acacia Park lots. It was at this time that he informed his mother of his acquisition of the Robinson tract property and the mortgage on the Long Brothers' addition and Fairmont addition lots, and promised to turn all of her property back to her in the proposed deal. Thereafter he negotiated the exchange of his mother's interest in this contract for the one-third interest in the Reedley garage property and,

having previously secured his mother's consent to the exchange, brought to her an assignment transferring the contract to the owner of the garage property, which she executed and entrusted to her son for the purpose of making the exchange. In doing so he took the garage property in his own name, which she only discovered after his death, which occurred shortly thereafter.

This brief summary of the involved and large number of exchanges of property shows that E. S. Buell had been plaintiff's confidential agent and that the property exchanged for the Columbia Colony property had been derived almost entirely from property of the plaintiff; that into the chain of transactions E. S. Buell had put only the sum of $300 of his own funds and that he had abstracted in the course of the transactions without the knowledge or consent of the plaintiff sums amounting in all to $1,260, besides the real property which he conveyed as part of the purchase price of the Columbia Colony property.

As before stated, the evidence clearly shows that the legal title to the property in controversy in this action was obtained by E. S. Buell by fraud and a breach of trust, and that the plaintiff is the party to whom it would have gone had the duty resting upon him been duly performed. It follows that the plaintiff is entitled to the relief demanded.

Judgment affirmed.

Waste, J., Lennon, J., Lawlor, J., Seawell, J., Myers, J., and Wilbur, C. J., concurred.

Rehearing denied.