[Civ. No. 3309. Third Appellate District.—October 31, 1927.]

HENRY McGUINESS et al., Appellants, v. WILLIAM LESTER et al., Respondents.

Taylor & Tebbe and J. P. McNamara for Appellants.

Horace V. Ley for Respondents.

FINCH, P. J.—Plaintiff brought this action to quiet his title to a strip of land of which he holds the record title but which is in the possession of the defendant Jane Lester and within her inclosure, they being the respective owners of adjoining parcels of land. The defendant William Lester filed a disclaimer and Jane Lester will be referred to as the defendant. Henry McGuiness will be referred to as the plaintiff. Judgment was entered in favor of the defendant and the plaintiff has appealed.

In the year 1917 the Pacific Improvement Company owned a tract of land near the town of Dunsmuir, containing 80 acres. About 20 acres on the west end of the tract "is waste land, nothing but gravel and overflow." An "old river channel divided the agricultural (land) from the gravel and sand." "There is about 9 acres lying east of the river channel that is flat agricultural land, very good soil." The remainder of the land apparently lies in the hills and is valuable only for the timber upon it. S. D. Root "was a brick mason and handled sand and gravel at Dunsmuir. Mr. Root was figuring on a new project" and "was quite anxious to get this gravel. . . . He didn't want the agricultural land." Dall Kalbaugh and John R. Jones "wanted some additional farming ground. They were putting this land into some vegetable gardens." Root, Kalbaugh, and a representative of the Pacific Improvement Company met upon the ground and there came to an agreement to the effect that Root would purchase the land west of and including the old river channel for $650 and that Kalbaugh and Jones would purchase the remainder of the 80 acres for $2,850. These prices, fixed by the grantor, were based on an estimate of the value of the timber on the respective parcels and the further fact that Kalbaugh and Jones were to get the agricultural land. The purchasers thereafter employed a surveyor who established on the ground the dividing line agreed upon. Subsequently the Pacific Improvement Company entered into separate contracts with the purchasers for the sale of the land to them and later conveyed the land to them by deeds. Both in the contracts and the deeds the boundary line between the two parcels of land was described in accordance with the field-notes of the said survey. These field-notes do not agree with the boundary line fixed by the

purchasers and laid out upon the ground by the surveyor, hence the present controversy. According to such field-notes and description, a considerable part of the 9 acres of agricultural land within the defendant's inclosure was conveyed to. Root. Kalbaugh and Jones "built a fense together . . . right on the line the surveyor surveyed." This fence has stood in its present location continuously since July 3, 1918, but the evidence does not show definitely when it was built. The land east of the fence has been in the open and notorious possession of the defendant and her predecessors in interest since the early part of 1918. Most of the 9 acres of agricultural land "is now cultivated, and has been from the beginning of the deal." The defendant testified: "I am familiar with the land mentioned in this case lying east of a certain fence, and have known that land since 1917 and have been living there since the 3d day of July, 1918. The improvements on the land consist of that little house that they were talking about, a barn, wood shed, chicken house and several cabins. We farm there and raising strawberries. We have water on the place that we get from the mountain above by a 6 inch pipe, 8 inch pipe and 2 inch pipe. . . . During the time that I resided there, Mr. Root nor anyone else claimed the land on our side of the fence. Mr. Root hauled gravel out of there every day for a long time, using his land as a gravel pit, up to the time Mr. McGuiness took it over. I am acquainted with Mr. Root and saw him frequently during the period while he was there. Root never tore the fence, never disputed the fence." Root conveyed the land which he acquired from the Pacific Improvement Company to the plaintiff. The plaintiff testified: "I received the deed early in 1924. . . . At the time I was on the premises during the lifetime of John R. Jones, a fence was on the premises. I don't know how many years it has been there. It was there . . . when I purchased from Mr. Root. . . . When I purchased the land I knew that there was a dispute as to where the line was and that Mr. and Mrs. Jones were living there, I didn't know how long. They were living there when I prepared the agreement with the Rainbow Mill & Lumber Company (March 9, 1920), but I don't know how long before that." The defendant is the successor in interest of Kalbaugh and Jones. The lands were assessed in accordance with the descriptions contained in the

deeds executed by the Pacific Improvement Company, and the parties and their predecessors in interest have paid all taxes levied upon their respective lands as so described.

Respondent relies upon the foregoing facts as showing an agreed boundary line. Appellant contends that only the owners of adjoining lands can establish their dividing line by agreement, and that at the time of the agreement proved in this case neither Root nor Kalbaugh and Jones had acquired any interest in either parcel of the land. Respondent also claims title by adverse possession, relying on *Price* v. *De Reyes*, 161 Cal. 484, 489 [119 Pac. 893], *Raney* v. *Merritt*, 73 Cal. App. 244, 251 [238 Pac. 767], and *Wagner* v. *Meinzer*, 53 Cal. App. 783, 784 [200 Pac. 838]. It is not necessary to determine either of these questions, nor is it necessary to determine whether, under the principles of law discussed in *Grants Pass Land etc. Co.* v. *Brown*, 168 Cal. 456, 461 [143 Pac. 754], the plaintiff is estopped to claim any interest in the land in dispute.

The evidence shows without conflict that Root came to an understanding with Kalbaugh and Jones that he would purchase a part of the 80 acres of land involved and that they would purchase the remainder, which included the land in dispute; that their grantor fixed the prices to be paid by the purchasers in accordance with the estimated values of such respective parcels; that, in pursuance of such understanding, Kalbaugh and Jones purchased and finally paid for the land in dispute at the price so fixed therefor; and that through a mistake in description, unknown to any of the parties to the deeds of conveyance, Root was given a paper title to part of the land so purchased and paid for by Kalbaugh and Jones. The court found "that the deeds do not correctly describe the lands as selected by said predecessors in interest, but through a mistake of said predecessors in interest the lines separating the respective parcels of land selected and purchased by each of them was erroneously described in said deeds; that the true line dividing the parcels of land so selected and purchased is marked by the fence now and for more than five years existing upon said line." Root was not in a position to claim ownership under his paper title as against the equitable title of Kalbaugh and Jones. "One who gains a thing by . . . mistake . . . is, unless he has some other and better right thereto, an in-

voluntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Civ. Code, sec. 2224.) "The general rule is that the real nature of the transaction concerning property conveyed . . . can be investigated and determined unless where in good faith interests of third parties have intervened and would be injuriously affected. It may be shown that the taking of a conveyance in the name of the grantee, or one of them, was a mistake, . . . or was taken under such circumstances as created a resulting trust or trust of some other character." (*Parks* v. *Parks,* 179 Cal. 472, 475 [177 Pac. 455, 456].) At the time of his purchase from Root, according to his own testimony, the plaintiff knew, and for several years prior thereto had known, the location of the division fence, and that the defendant and her predecessors in interest held exclusive possession of the land in controversy, and he also knew that there was a dispute as to the location of the dividing line. He was in no sense an innocent purchaser, but, on the contrary, he had at least constructive notice of the defendant's ownership of the land which he now claims under his deed from Root. (Civ. Code, sec. 19; *Scott* v. *Henry,* 196 Cal. 666, 671 [239 Pac. 314]; *Gibbons* v. *Yosemite Lumber Co.,* 190 Cal. 168, 172 [211 Pac. 4].) Plaintiff's rights, therefore, are no greater than were those of his grantor.

Appellant contends that the trial court erred in admitting evidence of the oral understanding between Root and Kalbaugh and Jones relative to the division of the land to be purchased by them. What has already been said shows that such evidence was properly admitted. There is no evidence in the record which would warrant a judgment in favor of the plaintiff.

The judgment is affirmed.

Weyand, J., *pro tem.,* and Hart, J., concurred.