[L. A. No. 16837. In Bank.—April 12, 1940.]

FRANCES GOMEZ, Appellant, v. ROBERT CECENA et al.,
Defendants; VICTORIA CECENA, Respondent.

Peter J. Youngdahl for Appellant.

H. M. Dalton for Respondent.

WASTE, C. J.—In this suit to impress a trust upon and quiet title to real property, the plaintiff appeals from an adverse judgment and from an order denying her motion for a new trial. The defendant Robert Cecena, who is the appellant's son, suffered a judgment to be entered against himself by default. His former wife, the defendant Victoria Cecena, contested the appellant's right to relief, and recovered judgment for costs. The only question raised on the appeal is whether there is sufficient evidence to support the judgment.

The appellant's claim to the property rests upon her contention that she furnished the money for its purchase and improvement upon the understanding. that it would belong to her. In 1923, Robert Cecena, who was then unmarried, and one Mike Barrera agreed to buy a lot, each paying $50

down and undertaking to pay a total of $1200 in monthly $30 instalments. This agreement was later superseded by new contracts of purchase by which each buyer would obtain a specific one-half interest in the lot. According to the appellant's evidence her son kept up his share of the payments for seven or eight months and then came to her with the suggestion that if she would build a house upon his half of the property he would give her the property and that he knew of a building contractor named Blinn who would erect a house for $1400. The appellant testified that she agreed to this and gave her son $400 to deliver to Blinn as the initial payment, and that thereafter she paid the balance due on the house in instalments of $50 a month. These payments were all made by her son who had executed a note and trust deed for the purchase price. She also testified that she paid the remaining instalments due on the purchase of her son's half of the lot and likewise put up an additional $200 for some concrete work after the completion of the house. In support of this testimony her savings account passbook was introduced showing withdrawals in 1924 of $450, $200, and two items of $40 each. She explained that all of the transactions were completed by her son in his own name because she could speak no English and had no knowledge of business affairs.

The appellant's testimony was substantiated by evidence given by her son. Concerning the building of the house he testified: "I told my mother I didn't have any money and she had money; I told her that if she wanted to build on the lot, that I would let her have the lot, my part of it, so she agreed with me to build. . . . My mother said it would be in my name because I was going to make the arrangements and all of that, and I was her son; in case of her death the property would be mine, you see." He also testified that he paid half the taxes on the property during the period that he and his mother lived there together and that he also paid a final balance of $87 due on the house in 1928.

The evidence concerning the building of the house and the payments made by the appellant was likewise corroborated by Robert Cecena's friend, Mike Barrera, who was living with the appellant and her son at the time.

The respondent and Robert Cecena were married in 1926, and from that time she and he and the appellant lived together on the property until 1930 when the appellant moved

to a separate residence. In 1928, Robert Cecena borrowed $1400 from a bank, and he and the respondent together executed a trust deed on the property to secure the loan. During the ensuing years payments were made on this debt out of the joint earnings of the husband and wife. In 1932 they built a garage, enlarged one room and added two rooms to the house, also paying for these improvements out of community funds. Robert Cecena left the respondent in 1936, and she remained on the property and continued to make payments upon the balance ($500) of the mortgage debt without the help of her husband.

In that year she brought suit against him for a divorce, seeking in her complaint to have the property in question set aside to her as community property of the marriage. When this complaint was served upon Robert Cecena,`he was living with his mother, and he testified that he told her that the respondent claimed the house and lot as community property. He cross-complained, asserting that part of the property in question was community and the remainder his separate property. After a hearing upon this and other issues, the court granted the respondent an interlocutory decree of divorce and also awarded the house and lot to her. A short time later, the appellant commenced this suit to establish a resulting trust in the property.

By this appeal the appellant contends that the judgment denying her relief is erroneous for the reason that the trial court was bound to accept the evidence showing her beneficial interest in the property. That evidence, she asserts, is not inherently improbable, and is neither contradicted nor impeached and hence was entitled to full credit.

■ While no universal and immutable formula can be prescribed for determining the weight to be accorded testimonial evidence, it has frequently been said that testimony which is not inherently improbable and is not impeached or contradicted by other evidence should be accepted as true by the trier of fact. (*Michaels* v. *Pacific Soft Water Laundry*, 104 Cal. App. 366 [286 Pac. 172]; *Shepard* v. *Shepard*, 65 Cal. App. 310 [223 Pac. 1012]; *Hynes* v. *White*, 47 Cal. App. 549 [190 Pac. 836]; *Lee Sing Far* v. *United States*, 94 Fed. 834; see Wigmore on Evidence, 2d ed., sec. 2034.) ■ On the other hand, one who claims a resulting trust in property has the burden of proving the facts establishing his

beneficial interest by clear and convincing evidence. (*Woodside* v. *Hewel,* 109 Cal. 481, 484 [42 Pac. 152] ; *Moulton* v. *Moulton,* 182 Cal. 185, 190 [187 Pac. 421].) ██ Even where it is satisfactorily established that all or part of the purchase price was furnished by one other than the grantee, if it appears in addition that the grantee was a child or other natural object of bounty of the person who made the payment, it will be presumed that a gift was intended. (*Quinn* v. *Reilly,* 198 Cal. 465 [245 Pac. 1091] ; *Lezinsky* v. *Mason etc. Distilling Co.,* 185 Cal. 240 [196 Pac. 884] ; *Faylor* v. *Faylor,* 136 Cal. 92 [68 Pac. 482] ; Rest. Trusts, sec. 442 ; 15 Cal. Law Rev. 160.) It is true, however, that such a presumption may be rebutted by adequate proof that the grantee was not intended to have the beneficial interest. (*Parks* v. *Parks,* 179 Cal. 472 [177 Pac. 455] ; *Buell* v. *Buell,* 191 Cal. 53 [214 Pac. 844] ; *Quinn* v. *Reilly, supra;* Rest. Trusts, sec. 443.)

██ Applying these principles to the present controversy, we think that the judgment has substantial support in the record. Conceding that the appellant satisfactorily proved that she contributed a substantial part of the purchase price of the property, we think that nevertheless the trial court was not bound to credit her testimony that she intended to acquire the beneficial interest. Her subsequent conduct was more consistent with the presumption that she intended a gift to her son. Thus, in 1928 she acquiesced in her son's conveyance of the property upon a deed of trust to secure his own debt. In 1930 she moved out of the house, leaving Robert Cecena and the respondent in sole possession. They made alterations and improvements on the premises, apparently without permission or objection from the appellant. In short, all of the ordinary rights and incidents of ownership over the property were exercised and asserted by Robert Cecena and his wife, and not by the appellant. Considering all of the circumstances of the case, we think that the court was warranted in concluding that the appellant has no interest in the property.

The judgment is affirmed.

Curtis, J., Shenk, J., Houser, J., Carter, J., Gibson, J., and Edmonds, J., concurred.