[Civ. No. 5512.   Fourth Dist.   Nov. 13, 1957.]

VICTOR WASSEL et al., Respondents, v. L. E. BLACK et al., Appellants.

Best, Best & Krieger, John D. Babbage and John H. Barnard for Appellants.

Earl Redwine and Maurice C. Sherrill for Respondents.

BARNARD, P. J.—This is an appeal from a judgment in a quiet title action. Both parties claim under deeds from the same grantor and the disputed property is a strip between the properties admittedly owned by the parties, which is 67 feet wide and contains 2.675 acres.

Mr. and Mrs. Caffey owned the northwest quarter of the northwest quarter of a certain section in the Coachella Valley. This is what is known as a "short quarter," containing 34.65 acres instead of the normal 40 acres. On January 3, 1947, the defendants agreed to purchase the easterly 20 acres of

this parcel, the deal being handled through the office of George Madden, a real estate agent. On January 4, 1947, the defendants caused a survey to be made and stakes set to mark the easterly 20 acres of the parcel. They immediately entered into possession and erected a house and garage which are situated upon the land now in dispute. They received a deed on April 5, 1947, describing the property as the east half of this short quarter instead of describing it as the easterly 20 acres thereof. The defendants did not discover this mistake until the fall of 1953.

In November, 1951, the plaintiffs purchased some land in the western part of this parcel from the Caffeys, Madden's office also acting as real estate agent in this transaction. On November 20, 1951, the plaintiffs received a deed describing the property sold as the west half of this short quarter.

Two years later, in the fall of 1953, Mr. Black discovered for the first time that his deed described less than 20 acres. He took the matter up with Mr. Madden, the real estate agent. After examining the escrow instructions in the sale from Caffey to the Wassels, Mr. Madden prepared a correction deed from the Caffeys to the Blacks describing the property as the east 20 acres of the northwest quarter of the northwest quarter of this section, and stating that it was a correction of the deed dated April 5, 1947. This deed was dated January 2, 1954, and recorded on January 28, 1954. In July, 1954, the plaintiffs brought this action to quiet title to the west half of this short quarter. The defendants answered denying title in plaintiffs and alleging that plaintiffs had purchased this short quarter excepting therefrom the easterly 20 acres thereof, and that their deed mistakenly described the land they had purchased. Trial of the action commenced on April 30, 1956. Prior to the trial the court denied defendants' motion for leave to file a cross-complaint and to bring in new parties. During the trial the court refused to allow the defendants to amend their answer for the purpose of setting forth in more detail the defense upon which they relied. The court found in favor of the plaintiffs, finding that the defendants have no right, title or interest in the land described in the plaintiffs' deed, that it is not true that the plaintiffs purchased from the Caffeys the northwest quarter of the northwest quarter of this section excepting therefrom the easterly 20 acres thereof, and that it is not true that at the time they purchased the property the deed mistakenly described the property which the plaintiffs had purchased. A judgment was entered

decreeing that the plaintiffs are the owners in fee and entitled to possession of the west half of this parcel; that the defendants have no right, title or interest in and to said west half of this parcel; and that the plaintiffs be granted a writ of possession. The defendants have appealed from this judgment.

Although not separately stated, the appellants' main contention is that the evidence is not sufficient to support the findings and judgment. They also contend that the plaintiffs' deed is subject to plaintiffs' knowledge of defendants' interest in the disputed property; that the court erred in excluding evidence affecting the title and rights of the parties to the action; that the court erred in ruling that any evidence of mutual mistake affecting the deeds of the parties was not admissible unless it involved a mistake occurring between the parties to the action; that the acts and declarations of the plaintiffs' grantor while holding title to the property were admissible against the plaintiffs; and that the court abused its discretion in refusing to permit the defendants to file an amended answer. The respondents contend that the judgment is supported by substantial evidence; that it must be presumed that their deed expresses the intention of the parties to that deed; that it is for the trial court to determine if this presumption has beeen overcome; that this presumption was evidence, and the evidence produced by the respondents merely created a conflict; that it follows that their deed sufficiently supports the judgment; that the court properly excluded evidence of transactions between the parties and their common grantor relating to the issue of mistake in their respective deeds, since such an issue was not sufficiently raised by the pleadings; that the court did not abuse its discretion in refusing to allow the respondents to file an amended answer during the trial; and that if any error was committed by the court it did not result in a miscarriage of justice within the meaning of article VI, section 4½ of the Constitution.

At the trial Mr. Wassel testified that he did not talk with Mr. Caffey or Mr. Madden prior to his purchase of the land but did talk with John Wilson, a broker (apparently one in Madden's office); that "nobody ever tells me about quarter or sections or nothing"; that "nobody represented that I am buying the East Half or the West Half or that I was buying 17 acres, a fraction over"; that he did not buy on the basis of so much per acre but he bought 17 acres; and that there was an area between his field of crops and Mr. Black's grapes,

"just sort of a turn around place," which was about 20 feet wide. He was asked if he knew that he was buying the property that was to the west of this little strip and he replied "Well, that is what I thought was 17 acres." He then testified "They told me it was 17 acres up to the grapes, a fraction over 17 acres." He was then asked "That is what you were buying was up to the grapes" and he replied "17 acres, that's right." The plaintiffs then rested on that testimony and their deed which was received in evidence.

Mr. Caffey testified that he went with Mr. Wassel to the east side of the land he was selling and showed him the stakes; that he told him that the 20 acres to the east was sold to Black and that he and Black had agreed to leave 10 feet apiece for a driveway; that he showed him Black's buildings and Black's grapes which were staked and wired; that they later went to a bank and entered into an escrow; and that he told them that he was selling the remaining portion of this parcel less the easterly 20 acres which was sold to Black. The escrow instructions on the sale to Wassel were marked for identification but the court refused to admit them into evidence. These instructions are dated November 6, 1951, and are signed by Mrs. Caffey, who held the legal title, and by Mr. Wassel and his wife. They provide for the sale to the Wassels of the northwest quarter of the northwest quarter of this section "excepting therefrom the westerly 20 acres thereof." It is obvious that the word "westerly" was a mistake, but these escrow instructions would show that the Wassels agreed that 20 acres should be excepted from the quarter of a quarter which they were otherwise buying. The banker who prepared the escrow instructions testified that they were prepared on the basis of a discussion had while the Caffeys and Wassels were present; that there was a discussion at that time regarding the 20 acres that was to be excepted from the conveyance to the Wassels; that Mr. Caffey said he was conveying this parcel excepting the westerly 20 acres; that he knew Black had bought and was operating 20 acres of this parcel but did not then know whether it was the westerly or the easterly 20 acres; that there was no discussion about the size of the parcel to be conveyed or the price per acre; that he ordered a preliminary report from the title company; that the title company called his attention to the fact that Mrs. Caffey owned the westerly portion of this parcel and he told them to go ahead on the basis of what Mrs. Caffey still owned; that he did not know that this was a short quarter but knew, when

his attention was called to it, that Mr. Black owned the easterly portion of the parcel; that Mr. Caffey told him definitely at the time that Mr. Black had 20 acres and that's why he wrote up the escrow instructions that way; and that Mrs. Caffey and Mr. and Mrs. Wassel signed the escrow instructions in his presence. A title company man testified that he changed the word "westerly" to "easterly" on the order from the bank for a preliminary report, and that he did this because it was discovered that the easterly portion of this parcel had been conveyed. The court sustained objections to other questions asked of this banker and the title man relating to how and why other changes were made, and what had led to the description actually used in the deed conveying the property to the Wassels. The only reasonable inference is that these changes were made by the banker and title man without consulting any of the interested parties.

Mr. Black testified that he bought 20 acres from the Caffeys on January 3, 1947; that he had a survey made on January 4 and stakes were set; that he started to build on January 6; that the house was about in the center of the disputed strip; that the house was occupied on February 5; and that he received his deed in April or May, 1947. He further testified that Caffey brought Wassel over and asked him to show Mr. Wassel where the line was between the two pieces of property; that he did this, and showed him that the line was "Right in the center of that driveway . . . between the two pieces of property"; and that he showed Mr. Wassel the line and the stake; that he had a conversation with Wassel sometime early in 1954 in which Wassel said that he had been informed that a deed which had been recorded covered a part of the property which had been deeded to him, and that he was going to have to do something about it with Mr. Caffey as he did not think that Mr. Caffey could give a deed to some property that had already been deeded to him. He also testified that he had received a correction deed from the Caffeys in January, 1954; that neither his deed nor his title policy said anything about acreage; and that he knew nothing about the mistake in his deed until the fall of 1953. Mr. Madden testified that a receipt he had with him dated January 3, 1947 was signed by him; that this was a receipt for $1,000 that Black paid to him to go into escrow on the purchase of the east 20 acres of this parcel at $400 an acre, making a total of $8,000. The court sustained an objection to the introduction of this receipt

into evidence on the ground that the Caffeys were not parties to this action.

Mr. Caffey was recalled and testified that when he made the sale to Mr. Black in 1947 he understood he was deeding Black 20 acres. He also testified that he had a conversation with Wassel in the spring of 1954 when Wassel claimed that Caffey had sold him half of a short quarter; that he then asked Wassel whether it was not true that he had shown him the property and the corners, to which Wassel replied "Yes"; that he asked Wassel whether it was not true that Black's ground was planted to grapes, staked and wired, to which Wassel replied "Yes"; that he asked Wassel "Didn't you understand Mr. Black owned this part that was in the vineyard staked and wired with the buildings on it, and Wassel replied "Yes"; that he asked Wassel if he did not understand that he was buying the remaining portion of this short 40, and Wassel replied "Yes"; that when he asked Wassel how he could claim the disputed property Wassel replied "I've got a deed to this and I am going to take Mr. Black's houses, his pipe line, his barns and so far into the street."

There was no mutual mistake between the parties to this action since there had been no dealings between them. The controlling question here was not as to the existence of such a mutual mistake, but was as to whether the plaintiffs were entitled to rely on the description in this deed under the circumstances surrounding the execution and delivery of that deed. ▮ While a deed is presumptive evidence it is not conclusive, and it is not sufficient to establish title in a grantee who possessed such knowledge of another's rights in the property as to subjugate his interests to that prior interest, or as to make the assertion of his paper title unjust in an equitable action. (*Lestrade* v. *Barth*, 19 Cal. 660; *McGuiness* v. *Lester*, 86 Cal.App. 454 [260 P. 925]; Civ. Code, § 2224.) In the Lestrade case, under somewhat similar circumstances, the court said: "The defendant was in the open, notorious and exclusive possession and occupation of the premises, having valuable and lasting improvements thereon. This possession and occupation were sufficient to put the plaintiff upon inquiry as to the interest, legal or equitable, which the defendant held in the premises, and that inquiry should have been made of the defendant thus in possession and occupation." In the McGuiness case, where the parties claimed under a common grantor, it is said: "He was in no sense an innocent purchaser, but, on the contrary, he had at least constructive notice of

defendant's ownership of the land which he now claims. . . . Plaintiff's rights, therefore, are no greater than were those of his grantor.'' Section 2224 of the Civil Code reads in part: ''One who gains a thing by . . . mistake, . . . is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.''

It appears here without conflict that the Caffeys intended to sell and Black intended to buy the east 20 acres of this short quarter; that Black occupied the full 20 acres for some years and placed permanent improvements thereon; that by agreement between Caffey and Black a 20-foot driveway or turning place was left between the 20 acres and the remainder of that parcel; that Wassel was shown the center of this 20-foot strip as the boundary line thus established, knew that Black claimed the property to the east of that boundary line, and saw Black's improvements thereon; that Wassel intended to buy the land to the west of that boundary line; and that Wassel signed escrow instructions providing for the purchase by him of this short quarter with the exception of 20 acres of land. While there was a mistake in these instructions in that the word ''Westerly'' was used instead of the word ''Easterly'' this mistake is not controlling. It not only conclusively appears that the Caffeys intended to sell Wassel the portion of the parcel which remained after the sale of the 20 acres to Black, but Mr. Wassel admitted at the trial that he intended to buy the property to the west of the boundary line shown him and to the west of the property he knew to be occupied and claimed by Black. He also testified that he thought the part he was buying, the land west of the boundary line shown him, contained about 17 acres. He was mistaken as to the acreage in that part but he fully understood which land he was actually buying. By somebody's mistake, or a series of mistakes with which Black had nothing to do, the deed Wassel received covered more land than was intended by him or by his grantor. Wassel not only admitted the essential facts, but he did not deny any of the evidence to the same effect received from other witnesses. The only conflict in the evidence was that Wassel said that he had not talked with Caffey prior to his purchase of the land while Caffey testified that he had talked to Wassel. However, Wassel did not deny that he had talked to Black and did not deny any of the other facts testified to with respect to showing him the boundary

line, with what occurred when the escrow instructions were signed, or as to his later conversation with Caffey. Incidentally, it appears in connection with the motion for a new trial that Caffey admitted that he had told Wassel that the remainder of the parcel contained about 17 acres, and that Caffey had offered to reimburse Wassel for any shortage that existed, which offer Wassel had not accepted. While Wassel may have a claim against the Caffeys this does not involve Black or his interest in this property, and the undisputed evidence received would not support a judgment in favor of the plaintiffs.

While it appears that there was a mistake in both deeds given by this grantor, to Black in 1947 and to Wassel in 1951, the controlling question here is as to the effect of the deed to Wassel. He had the burden of proof and in this equitable action he is not entitled to take advantage of a mistake in his deed when it appears, without conflict, that he knew the essential facts insofar as the rights of Black are concerned, and fully understood that he was not buying any part of the property claimed and occupied by Black. While the evidence received was not sufficient to sustain the judgment, the record also reveals serious errors in the trial in that a great deal of material evidence was excluded on the mistaken theory that evidence of a mistake was not admissible unless it related to a mistake occurring between the parties to the action. The issue as to the mistake in the plaintiffs' deed, which was material here, was sufficiently raised by the pleadings. In view of the facts shown by the record, it is obvious that it cannot be said that a miscarriage of justice does not appear.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.