## Willett, et al. v. Willett, Administrator, et al.

(Decided February 9, 1923.)

### Appeal from Bourbon Circuit Court

1. Trusts—Creation of Trust for Support of Dog.—While a dog may not be a devisee or legatee under a will, a trust may be created for his support and maintenance.

2. Trusts—Failure to Name Trustee.—Although a testatrix failed to name a trustee to operate and carry out the trust, the trust will not be allowed to fail for this reason.

3. Trusts—Trust in Favor of Dog—Naming Trustee.—Where a testatrix gave all of her property to her sister for life except $1,000.00, the interest on which "is to be used to support and care for our dog . . . the income to be employed to support and care for our dog 'Dick,' but if the income is not sufficient for that purpose the corpus may be encroached upon to carry out the trust," the words employed are sufficient to warrant a court of equity in declaring such trust to exist in favor of the dog, and to name a trustee of the trust.

4. **Wills—Religious Societies.**—A will providing that all of the property of the testatrix to go to her sister for life and "at her death then to go to the Hopewell Church for a fund to be known as the 'Quincy Burgess Fund,' to be used for the church," will not fail for indefiniteness, for equity will convert realty into personalty and thus create a fund for the use and benefit of the church.

A. D. COLE and H. W. COLE for appellants.

EMMETT DICKSON and DENNIS DUNDON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Affirming in part and reversing in part.

The last will of Mrs. Bessie White Burgess, deceased, of Hutchinson, Bourbon county, Kentucky, is presented for construction. It reads:

"I write this as my last will. I give my sister, Mrs. Minnie Willett everything that I have at my death for her life, at her death it is to go to the Hopewell church for a fund to be known as the 'Quincy Burgess Fund' to be used for the church, with the exception of $1,000.00, which is to be used for the support of our dog 'Dick,' if the interest is not sufficient for him to be kept in comfort, that is being well fed, have a bed in the house by a fire and treated well every day, that the principal be used to such a sum so it will last his lifetime.

"I also give Mrs. Belilah Stevens $100.00 for being kind to me when I needed it. Dicky must have three meals daily."

The plaintiffs, claiming that they and the defendant, Minnie Willett, are the only heirs-at-law of Bessie White Burgess, bring this suit, asking for a construction of said will, and charge, in substance, in their petition that the devise to the Hopewell church is void for indefiniteness and uncertainty, and it is in conflict with and in contravention of section 319 of the Kentucky Statutes, and make the further contention that the plaintiffs are entitled, as the heirs-at-law of Bessie White Burgess, at the death of the life tenant, Minnie Willett, to have and receive the estate, real and personal, devised by said testa-- trix to the Hopewell church.

It is the contention of the church trustees that by the terms of this will, not only the personal property devised by said will, at the death of Mrs. Minnie Willett, passed to the Hopewell church but that the land, by the terms of said will, was equitably converted, at the death of Mrs. Minnie Willett, the life tenant, into personal property,

and as personal property passed to and vested in these defendants as trustees, for the benefit of the Hopewell church. The lower court held that the devise to the church was valid, and through equitable conversion passed as personalty to the trustees of the church, but held that the bequest for the support of the dog "Dick" was invalid.

We think the meaning of the will, copied above, may be better understood if some of its parts be transposed so that it reads:

"I write this as my last will. I give to my sister, Mrs. Minnie Willett, everything I have at my death, except $1,000.00, which is to be used for the support of my dog, 'Dick,' to be used by her for life; at her death it is to go to the Hopewell church for a fund to be known as the 'Quincy Burgess Fund,' to be used for the church. If the interest from the $1,000.00, which is set aside for the support of my dog 'Dick,' be not sufficient to keep him in comfort, that is be well fed, have a bed in the house by a fire and treated well every day, the principal (may) be used so it will last his lifetime."

We think the following is a fair interpretation of the intention of the maker of the will, as gathered from the entire instrument: Testatrix gave all of her estate to her sister for life, except $1,000.00, the interest on which is to be used to support and care for her dog, and at the death of her sister the remainder to go to the Hopewell church for a fund to be known as the "Quincy Burgess Fund." This intention is plainly manifested by the writing. The sister, Mrs. Minnie Willett, takes all the estate, except $1,000.00, for life; after her death all this property, both real and personal, passes to the said church, if by law it may receive it in the way and for the purpose expressed in the testament. The remaining $1,000.00 not devised to Mrs. Minnie Willett, is to pass to a trustee, the income to be employed to support and care for testatrix's favorite dog "Dick," and if the income is not sufficient for that purpose the corpus may be encroached upon to carry out the purposes for which the bequest was made. It is insisted, and the lower court so held, that the bequest for the support of the dog "Dick," must fail because (1) there is no trustee; and (2) a dog cannot take as devisee under our law.

It must be remembered that equity never allows a trust to fail for want of a trustee. The court can and should appoint a trustee to take and carry out the trust

created in favor of the dog. Kentucky Statutes, section 318; Green v. Fidelity Trust Co., 134 Ky. 311; Rothe v. George, 93 Ky. 609.

This is not a devise to the dog Dick, but a trust created for his use and benefit, and is not contrary to law but is allowable under our statutes, section 317, where it is provided:

"All grants, conveyances, devises, gifts, . . . heretofore made, or which shall be hereafter made, in due form of law, or any lands, tenements, rents, . . . money, . . . for the relief or benefit of aged or impotent and poor people, . . . or for any other charitable or *humane purpose,* shall be valid if the grant, conveyance, devise, gift, appointment, or assignment shall point out, with reasonable certainty, the purpose of the charity and the beneficiaries thereof, except as hereinafter restricted."

While the devise did not create a charity in its strict technical sense—Ford v. Ford, 91 Ky. 576—it was for a "humane purpose" within the meaning of our said statutes.

There is a clear distinction between a "charity" and a "humane purpose." The latter may be sustained where the former would fail. Charity extends to every one of a class, while it is a humane purpose which moves a person to take care of or feed a single hungry person, bird or dog.

Lexicographers define, illustrate and explain the word "humane" as follows: "Having the feeling and inclinations proper to man; having tenderness, compassion, and having a disposition to treat other human beings and the lower animals with kindness; kind; benevolent." (Century.)

"Having the feelings and inclinations creditable to man; having, showing or evidencing a disposition to treat other human beings or animals with kindness or compassion; kind; benevolent." (Webster's New International.)

"*Humane* differs from the ordinary use of *merciful* in that it expresses active endeavors to find and relieve suffering and especially to prevent it, while *merciful* expresses the disposition to spare one the suffering which might be inflicted." (Century.)

In the case of Ford v. Ford's Exor., *supra,* in distinguishing between a charity and a humane purpose, it is said:

"Charity, in its most general legal sense, has been said to be a general public use; but the definition given by the eminent counsel in the Girard will case has received judicial approval. It is: 'Whatever is given for the love of God or for the love of our neighbor, in the catholic and universal sense, given from these motives and to these ends, free from the stain of everything that is personal, private or selfish, is a gift for charitable uses.'

"Our statute, by declaring that a devise for any 'charitable or humane purpose' shall be valid, has perhaps gone even beyond the limit fixed by these accepted definitions."

"A gift or devise for the benefit of useful animals," says Alexander's work on Wills, page 1645, "is for a charitable purpose. Thus a bequest to a city to erect a suitable fountain for the benefit of thirsty animals and birds; a bequest to park commissioners for a fountain with a drinking basin for horses; a bequest for the founding of an institution for the study and cure of maladies of quadrupeds or birds useful to man; a bequest to a society to promote prosecution for cruelty to animals; a bequest for the maintenance of starving and forsaken cats; a bequest for the publication of a paper by a society for the prevention of cruelty to animals; a bequest to a home for lost dogs, and for the suppression and abolition of vivisection, are all for charitable purposes. It seems, however, that where the bequest is for the benefit of animals not useful to mankind, such as the feeding of English sparrows, a gift is not a charity. And, furthermore, a gift in favor of the testator's horses and dogs is obviously not a charity because it is intended for the benefit of the particular animals mentioned and not for the benefit of animals generally."

In the English case of In Re Dean, reported in 41 Chancery Division, page 552, the court in discussing a trust for the benefit of the horses and dogs of the testator, observes:

"It is said that it (the trust) is not valid because (for this is the principal ground upon which it is put) neither a horse nor a dog could enforce it. It is obviously not a charity, because it is intended for the benefit of the particular animals mentioned and not for the benefit of animals generally, and it is quite distinguishable from the gift made in a subsequent part of the will to the *Royal Society for the Prevention of Cruelty to Animals,* which may well be a charity. In my opinion this provision for

the particular horses and hounds referred to in the will is not, in any sense, a charity, and if it were, of course, the whole gift would fail, because it is a gift of an annuity arising out of land alone. But, in my opinion, as it is not a charity, there is nothing in the fact that the annuity arises out of land to prevent its being a good gift.''

See also 11 Corpus Juris, page 326.

It, therefore, appears that the chancellor was in error in holding the bequest in favor of the dog Dick, invalid, and unenforcible.

The right of the Hopewell church to the devise is not disturbed by the character of the property at the time of the making of the will, nor by the alleged indefiniteness of the terms of the writing; nor are the trustees of the church for any reason unable to take under the devise. Clearly the testatrix intended to create a fund to be used for the church. She did not devise the property belonging to her estate in kind to the church or its trustees, but only the proceeds of such property after it had been converted into money. The expression ''to go to the Hopewell church for a fund to be known as the 'Quincy Burgess Fund,' to be used for the church,'' indubitably fixes the character of the gift, and makes it certain that the testatrix intended the property at the death of her sister to be converted into money, creating a fund to be known as the ''Quincy Burgess Fund,'' to be used for said church. Where the language employed by the devisor clearly indicates, as in this case, such a purpose equity steps in and by treating that as done which should be done, converts the real property into personalty.

''The right of a testator,'' says 6 R. C. L., page 1073, ''to make land money, to effect his own purpose, is unquestionable; and it follows from this right that persons claiming property under a will directing its sale must take it in the character which the will imposes on it. This results not from the application of any artificial rule, nor any equitable doctrine, but solely because it is the testator's expressed desire. But while in such a case it is not the law that works the conversion, but the will that directs it, the law does, as has been seen, sometimes employ a fiction in aid of a testator's intention, and by use of it the conversion which the testator ordered is anticipated in such a way that what is ordered to be done is regarded as actually accomplished. Necessarily, to work an equitable conversion of property there must be a direction,

either express or implied, in the instrument intended to effect the transmutation."

The same rule is stated in 13 C. J., page 862, as follows: "On the other hand, the intention to convert may be implied, as where a testator authorizes his executors to sell his real estate, and where it is apparent from the general provisions of the will that he intended such estate to be sold, although the power of sale is not in the terms imperative. The mere absence of words of express command or direction should not be held to render the exercise of the power discretionary, when so to hold would defeat the intention of the testator as it appears from the whole will." Reynolds v. Reynolds, 187 Ky. 324.

Considered and construed in the light of all the authorities with a view to finding and enforcing the intention of the testatrix, we are persuaded that under the will Mrs. Minnie Willett takes a life estate only in the property devised to her, with remainder, when converted, for the use of the church. In the remaining $1,000.00 a trust is created for the use and benefit of the dog Dick, which will not be allowed to fail for want of a trustee, in this case where a humane purpose is sought to be accomplished. The residue, of this latter fund, if any there be, will of course pass at the death of the dog Dick as undevised estate.

For the reasons indicated the judgment is affirmed in part and reversed in part.