RICHBERG et al. v. ROBBINS.—228 S. W. (2d) 1019.

Jackson. January 7, 1950.

Petition for Certiorari denied by Supreme Court, March 17, 1950.

B. J. Semmes, of Memphis, for plaintiff in error.

W. C. Rodgers, of Memphis, for defendant in error.

SWEPSTON, J. This appeal involves a will contest.

On August 20, 1948 Gerald S. Richberg, a resident of Memphis, died leaving an estate in personalty only, which counsel agree amounted to about $6,000.00.

After his death two paper writings were found. One reads as follows:

"201 Linden

December 17-1947

"I, Gerald S. Richberg do on this seventh day of December 1947 will all my earthly possessions to my dog of which is an American Pit Bull female. Black with white spot in breast. Named Dixie. After all my burial and hospital expenses (if any) are taken care of and Clay Robbins of 194 S. Somerville, Memphis, Tennessee to be administrator. This being written at my request and signed in the presence of each other. And $40.00 per month to be the amount spent for the dog's care.

Signed—Gerald S. Richberg

Witness (1) Emmett M. Shepard

Witness (2) Clay Robbins (194 S. Somerville, Memphis, Tennessee.)"

The other reads as follows:

"February 16-1948 Memphis, Tenn.

"I, Gerald S. Richberg on this sixteenth day of February 1948. In my own handwriting declare this my final will to be as follows, $4500.00 to be used for the care of my dog which is a black female Pit Bull terrior named Dixie, at a set rate of $35.00 per month and she is to be kept in the City of Memphis, Tenn. Clay Robbins of 194 S. Somerville is to be administrator of my estate and is to get $300.00 for services rendered and without bond. Any amount of cash or personal property to be willed to Miss Frances Cockran of 201 Linden, Memphis, Tennessee. Above the $4500.00 set aside for the care of my dog.

After my Doctor bill and burial expenses is paid, whatever I may have left will go to Miss Frances Cockran.

Respt.—G. S. Richberg"

The said Clay Robbins, named administrator in both instruments, sought to probate the earlier in full and the last sentence and signature of the latter reading:

"After my Doctor bill and burial expenses is paid, whatever I may have left will go to Miss Frances Cochran.

Respt.

G. S. Richberg".

The Probate Court denied probate of both on the ground that the first writing is invalid because a dog cannot be made a legatee or a distributee; that the latter is not wholly in the handwriting of the deceased.

In the Circuit Court the next of kin intervened and the issue of devisavit vel non was tried by the Court without a jury. That Court allowed probate of the earlier writing but denied probate of any part of the latter.

Both parties have appealed from the judgment of the Circuit Court and assign error.

Clay Robbins, the proponent, assigns the one error that the Court denied probate of the above quoted portion of the latter writing.

The next of kin assigns as error the allowance of probate of the earlier writing.

Considering first the assignment of the next of kin, the argument is that the writing of December 17, 1947, is not of testamentary character, because (1) a dog is itself property and cannot be a legatee, (2) the testimony of one attesting witness shows that deceased intended to make another will so as to provide for Frances Cockran and that he did not, therefore, declare this to be his last will.

■ We find it unnecessary to decide the interesting question whether a dog may be a legatee for the reason that the language of the instrument taken as a whole raises the question whether there was an attempt to bequeath property to the dog or an attempt to set up a private trust for the care of a specific animal, for which latter supporting authority will be found in Page on Wills (3d Ed.) Section 1193, citing In re Dean, L. R. 41 Ch. Div. 552; Willett v. Willett, 197 Ky. 663, 247 S. W. 739, 31 A. L. R. 426.

It is a matter of construction of the will which is not a proper issue in probate proceedings. Jones v. Jones, 163 Tenn. 237, 43 S. W. (2d) 205; Condry v. Coffey, 163 Tenn. 508, 43 S. W. (2d) 928.

■ As to the question of animo testandi with reference to the first writing, it appears that testator had been suffering from heart disease for some time. His wife had just died a few hours before this first writing was executed and he was naturally in a quite disturbed state of mind. He called in Clay Robbins and asked him to draw the will which he dictated. Both were unlettered in the law. The execution of the will is shown by the testimony of Clay Robbins and Shepard to have been carried out in accord with the 1941 Act, Code 8098.1 et seq., so as to make it on its face a formal or attested will.

Contestants rely, however, upon the rule stated in Crutcher v. Crutcher, 30 Tenn. 377, 385, 386, which is:

"But, although it may appear in the proof of the script propounded, that the requisites of the statute have been, in all respects complied with, and although such compliance will raise the presumption, prima facie, that the writer intended the paper as his will; yet, this presumption may be impelled by *intrinsic* and *other proof,* and it may be shown that there was an absence at its execu-

tion of the animus testandi, or if that intention were present, that the writer did not *intend by that particular script to make a final disposition* of his estate; as if it were merely notes or memoranda, or other imperfect and executed paper deliberative in its character, and from which he intended to prepare his will or to have it prepared, holding it at the same time subject to such changes and alterations, as, upon further reflection, he might deem expedient and proper; or, if perfected and executed by the writer, that it was done for some other purpose and not for a will, as in the case of Nichols v. Nichols, 2 [Phill. 180; or that the writer had not sufficient reason or capacity to make a will; or that it was made under duress or obtained by fraud. The great requisite of a will is the animum testandi, not in any general sense, but in reference to the script propounded as a will. In the case in 2 Phill. 180, referred to, Sir John Nichol observes, that 'a witness attests a will for the purpose of giving authenticity to the factum of the instrument; the animus testandi is the very point into which the court of probate is to enquire—*the mere act of witnessing or signing does not exclude, of necessity, the absence of the animus testandi*, any more than the mere act of cancellation excludes of necessity the absence of the animus revocandi. It may have been signed under duress, or under *other circumstances* where there was no intention to make testamentary disposition.' With much greater force will these observations apply, when the paper is imperfect, or not executed, or is informal and inartificial in its character, as to render it difficult to say, whether it was intended as a deed or a will, or as *mere notes and memoranda for a will.* Sim[m]s v. Sim[m]s, 5 Ired. [N. C.]. 684; St. Johns Lodge v. Callender, 4 Ired. [N. C.] . 335; 4 Kent's Com. 532, margin."

Counsel seeks to apply the foregoing to testimony of Shepard, elicited after he had proved the formal execution of the will, which is as follows:

"Q. What did he state with reference to what that paper was; did he make any statement about what it was? A. Yes, sir; he had heart trouble and he was expecting to go any time after my aunt died; so, I was very close to him, and he said he figured he going to die himself because he had to call the doctor two or three times, and he thought he would fix up something to make a will, and he said he was going to take .care of my cousin.

"Q. You mean by your cousin, Miss Frances Cochran? A. Yes, sir, that's right, but he was to make one later; he told me he was going to make a different will than this.

"Q. You mean a later will? A. Yes, sir.

"Q. What was the purpose of making another later will? A. I was very close to him—

"Q. What was the purpose of making another later will? A. To take care of Frances, my cousin.

"Q. To take care of Frances, your cousin? A. He said he wanted to take care of her."

Taking this testimony with the attempt later to make another will on February 16, 1948, counsel maintains that is shown that the testator had no testamentary intent with reference to the instrument of the prior December 17.

We think this testimony when paraphrased would be substantially this:

"I am a sick man; I may suffer a fatal heart attack any minute, laboring under the shock of my wife's death a few hours ago; I am making this will now to see that my dog is taken care of, but if I survive the shock, I will

change this will or make a different one, so as to take care of both my dog and Frances Cochran.''

In view of testator's conduct under the circumstances in requesting Robbins to draft a will at his dictation, in calling witnesses to attest it as his will, in requesting Robbins to look after his dog, and in signing the will, we do not think that his statement as to his intention to make a change later was a negation of his present testamentary intent as to the writing he was in the act of executing.

■ See Pate on Wills (3d Ed.) Section 50, last par., where it is said: ''The fact that the testator intends, at the time of the execution of the will, to make changes therein (LaRue v. Lee, 63 W. Va. 388, 60 S. E. 388 [14 L. R. A., N. S., 968, 129 Am. St. Rep. 978]), or to execute another will (Brown v. Avery, 63 Fla. 355, 376, 58 So. 34, Ann. Cas. 1914A, 90, does not prevent the existence of his intention to make the will in question, and it does not render it invalid.''

In the first case cited the testator wrote his will in pencil with several erasures and interlineations. On a separate paper he wrote: ''I may change my will (stating the contemplated changes). If I dont make theas changes my will must stand as I hav it now Roat''. [63 W. Va. 388, 60 S. E. 389].

The second case went off on demurrer and is not particularly applicable here, but in 57 Am. Jur. 46, Section 10, are cited several cases, one of which is applicable.

Nelson v. Nelson, 235 Ky. 189, 30 S. W. (2d) 893, 894, wherein testator wrote on a sheet of his office stationery his name, address, profession and the date and began with:

''Until I can have my will written the following are my wishes in regard to my estate . . .''.

He then expressed his wishes, signed his name and kept the paper in his office where it was found after his death. Held, that these words did not show a lack of testamentary intent and the writing was his will.

Contestant's assignment is accordingly overruled.

 Proponent's assignment arises out of the fact that in February following the first document testator requested Robbins to draw him another form for a different will which he intended to copy in his own handwriting. When Robbins had written out a draft, testator then added in his own hand the last sentence quoted supra and his signature. He took the paper with him and it was found in his effects but he never made a copy of it.

Proponent seeks to extract from his second document this last sentence and probate it as a holographic codicil to the writing of December 17. It is urged that this should be allowed because (1) it would carry out the testator's intention and (2) a will may consist of several separate papers.

Counsel concedes, however, that the writing cannot be probated as a holographic will, because all of its material parts are not in the handwriting of the testator; but it is said that it is evidence of the testator's intention.

Counsel quotes syllabus 10 from Howell v. Moore, 14 Tenn. App. 594.

We do not see the relevancy of this citation and will not encumber this opinion with a discussion of that lengthy opinion. A reference to 14 Tenn. App., pages 614 to 625, especially page 616, middle, will disclose that the writings were admitted as evidence on points other than the intention of the testator.

The rule is too well established to need citation of authority that the intention of the testator must be gathered from the language of the will, that is, the paper or those several papers which have already been proved to be the will.

This, however, is again a matter of construction which is not involved in a probate proceeding.

■ Grant that a will may consist of several separate paper writings and that only such part or parts of one or more writings as are material in a dispositive sense may be extracted, not out of context but simply apart from the irrelevant matter, from an entire document, for example, several letters as in Druen v. Hudson, 17 Tenn. App. 428, 68 S. W. (2d) 146; or that the same document may contain both testamentary and nontestamentary provisions each relating to different properties; yet in all such instances the writing in order to be entitled to probate as a holograph must be wholly in the handwriting of the testator.

■ It is obvious that the two documents in question provide an entirely different disposition of the same property. If we should extract the last sentence of the second one and add it to the first, we would thwart the intention expressed in each document.

We, therefore, overrule proponent's assignment.

The judgment of the Circuit Court is affirmed, the cause is remanded thereto for further proceedings in accordance herewith. The costs will be paid one-half by each party.

Anderson, P. J., and Tipton, Special Judge, concur.