[Civ. No. 22428. Second Dist. Div. Two. May 12, 1958.]

Estate of ETHEL MAY KUTTLER, Deceased. BERTHA McQUARRIE et al., Appellants, v. MICHAEL M. KUTTLER, as Guardian, etc., et al., Respondents.

334

Kenneth C. Beatson and William C. Rau for Appellants.

Wellborn, Barrett & Rodi, Frank C. Hubbard and Gyte Van Zyl for Respondents.

ASHBURN, Acting P. J.—Several appeals are presented together in this court and cause. Of primary importance is the one taken from an order refusing to admit to probate a holographic document made by decedent, Ethel May Kuttler, on February 16, 1956.

Decedent died a widow on February 28, 1956, leaving three grandchildren as her sole heirs; two brothers and a sister survived her, as did Earl Hayter to whom she was engaged to marry. Her estate consisted of cash, stocks, bonds, trust deed notes, furniture and household and personal effects; also certain real property appraised at $52,500; the entire estate was valued at $143,000.

Her sister, Bertha McQuarrie, and her fiancé, Earl Hayter, petitioned for probate of the holographic instrument; their application was opposed by Michael M. Kuttler as guardian for the three minor grandchildren. The objections were sustained and probate of the document was denied. It reads:

"Los Angeles 15, Calif. February 16th, — 56 To whom it may concern: If at any time I should pass on before I have a recorded Will: this is to certify that I do not want Mike Kuttler or Vera Kuttler, my deceased Sons' wives to have one thing or one cent of what I have: nor the children Joan, Bill or Nancy Ann as I never see them so I enjoy no pleasure from them.

"Notify Earl Hayter or my sister Bertha McQuarrie DO-7-7821—for them to dispose of my belongings as they see fit. Signed Mrs. Ethel May Kuttler 2/16/56."

The trial judge ruled that the instrument is not testamentary in character, was not intended to be testamentary, was not intended to dispose of decedent's property and did not do so. From the order denying probate Hayter and Mc-Quarrie appeal.

The effect of the instant ruling is to vest decedent's "belongings" in the three grandchildren whom she expressly disinherited.

There is no escape from the conclusion that Mrs. Kuttler did intend this document to operate as her will. Testamentary intention is thus defined in *Estate of Sargavak*, 35 Cal.2d 93, 95 [216 P.2d 850, 21 A.L.R.2d 307] : "The testator must have intended, by the particular instrument offered for probate, to make a revocable disposition of his property to take effect upon his death." To this definition the court added this caution: "It bears emphasis that we are here concerned not with the meaning of the instrument, but with the intention with which it was executed." (P. 96.)

It is also well to bear in mind the fact that the search for a testatrix' intention does not involve a determination that she understood the legal effect of the directions found to have been expressed by her in the will. The effect of what she has provided is governed by substantive law. If she makes a bequest which violates the rule against perpetuities (*Estate of Fair*, 132 Cal. 523 [60 P. 442, 64 P. 1000, 84 Am.St.Rep. 70]) or attempts to immunize a trust beneficiary's income from claims of his creditors to an extent not recognized by statute (*Canfield* v. *Security-First Nat. Bank*, 13 Cal.2d 1 [87 P.2d 830]) or to defeat the claim of the Alien Property Custodian to a future interest (*Estate of Zuber*, 146 Cal.App.2d 584 [304 P.2d 247]), that intention, though plainly shown, cannot prevail.

Volume 57, American Jurisprudence, section 1134, page 729 : "*Contravention of Rule of Law or Policy.*—Although all the arbitrary rules and canons of testamentary construction are subordinate to the intention of the testator, it is universally recognized that the testatorial intention, even where clearly ascertainable, must yield to an established rule of law or public policy if it is in conflict therewith. Common examples of situations in which the testator's intention is overcome upon this theory are afforded by wills whose terms disregard the rule in Shelley's Case or the rule against perpetuities. In such cases the will must fail of effect, not because the intent

of the testator does not control in its construction, but because the law will not permit his intent to be accomplished. It is to be remembered in this connection that the question in construing a will is not whether the testator intended to make a valid disposition of his property, but what provision he actually intended to make; when that intention is found, it is for the court to determine whether or not the intended provisions are valid or illegal.''

 Not only does the document at bar disclose unmistakable testamentary intent but extrinsic evidence, which was clearly admissible (*Estate of Sargavak, supra*, 35 Cal.2d 93, 97), explains the form which the document took. Mrs. Kuttler had talked to her attorney several times about preparing a will for her. She told him: ''I don't want my grandchildren or my daughters-in-law to get their hands on anything I have got.'' He advised that she could not disinherit her grandchildren unless she gave the property to someone else; ''[y]ou have to decide who you are going to give it to or they will take it against the will on any other part you are going to dispose of.'' The reply was: ''I haven't decided, but I am thinking it over.'' The matter was left in this posture at the conclusion of a conversation of February 8, 1956. By February 16, 1956, she had devised a means of making a will which would serve her purpose until she arrived at a definite decision as to how she wanted to distribute her estate. She decided to give her sister, Bertha McQuarrie, and her fiancé, Earl Hayter, a general power of appointment. Perhaps she did not think in such terms, but that is the legal effect of what she did. She died 12 days later, on February 28, 1956. The day after the writing was executed she spoke to Earl Hayter about it; he lived next door; saw her every day and they were engaged to be married on or about April 25, 1956. On this February 17th, ''she told me that if anything should happen to her, 'I have my will lying there on the desk.' Q. Did she point to the desk or indicate the desk at the time? A. She just nodded (illustrating). Q. Nodded to it? A. Yes. And I started over there, and she said, 'Don't bother; it will be right there if you want it.' Q. And what else did she say? A. She said, 'Call my sister, too.' And I said, 'What is her telephone number?' She said, 'It is on there' (indicating). Q. Again nodding toward the desk? A. Yes. And I started to go pick it up and she said, 'Just leave it there.' '' The sister, Bertha McQuarrie, saw her on February 23rd: ''I came in there and she was ill, and when I entered the room she said,

'I thought I was going to die last week. I left something for you on the desk.' '' The combination of the oral evidence and the document shows an indubitable testamentary intent.

In our opinion there was no substantial basis for rejection of this testimony by the trial judge. ▉ ''While no universal and immutable formula can be prescribed for determining the weight to be accorded testimonial evidence, it has frequently been said that testimony which is not inherently improbable and is not impeached or contradicted by other evidence should be accepted as true by the trier of fact.'' (*Gomez v. Cecena*, 15 Cal.2d 363, 366 [101 P.2d 477].) ▉ ''It is the general rule that 'the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted as proof of the fact.' (10 Cal.Jur. § 362, p. 1143; *Estate of Warner*, 167 Cal. 686, 690 [140 P. 583]; *Hynes v. White*, 47 Cal.App. 549, 552 [190 P. 836].)'' (*Joseph v. Drew*, 36 Cal.2d 575, 579 [225 P.2d 504].) ▉ But if that testimony were properly disbelieved, its rejection would not create affirmative evidence to the contrary of that which was discarded. (*Estate of Bould*, 135 Cal.App.2d 260, 264 [287 P.2d 8, 289 P.2d 15].)

▉ Be that as it may, the writing in question affords irrefutable internal evidence of the requisite testamentary intent. First it disinherits in explicit language decedent's only heirs (she left no children and no other grandchildren); then it confers a power of appointment upon Hayter and McQuarrie with respect to her entire ''belongings.''[1]

▉ ''A power of appointment, which may be created by deed or by will, is defined, generally, as a power or authority given to a person to dispose of property, or an interest therein, which is vested in a person other than the donee of the power.'' (*In re Lidston's Estate*, 32 Wn.2d 408 [202 P.2d 259, 265].) ▉ No particular form of words is necessary to the creation of such a power. (3 Tiffany Real Property (3rd ed.) § 685, p. 20; *In re Rowlands' Estate*, 73 Ariz. 337 [241 P.2d 781, 784]; *In re Lidston's Estate, supra*, 266; 96 C.J.S. § 1062d, p. 702.) ▉ Such a disposition of a testatrix' property satisfies the cases next cited, which hold that

---

[1]The question of whether the phrase ''my belongings'' included decedent's real property as well as personalty does not arise on petition for probate (*Estate of Parsons*, 196 Cal. 294 [237 P. 744]; *Estate of Neubauer*, 49 Cal.2d 740 [321 P.2d 741]); it arises only upon petition for distribution or some intermediate occasion such as determination of the right to letters of administration, a matter discussed *infra*.

it is essential to a valid will disinheriting all or any of the heirs that it also make some valid disposition of decedent's property. (*Estate of Walkerly*, 108 Cal. 627, 652 [41 P. 772, 49 Am.St.Rep. 97]; *Campbell-Kawannanakoa* v. *Campbell*, 152 Cal. 201, 207 [92 P. 184]; *Estate of Fritze*, 85 Cal.App. 500, 505 [259 P. 992]; *Estate of Mathie*, 64 Cal.App.2d 767, 781 [149 P.2d 485]; *Estate of Heney*, 66 Cal.App.2d 867, 869 [153 P.2d 427]; *Estate of Dunn*, 120 Cal.App.2d 294, 295 [260 P.2d 964]; 2 Page on Wills (3d lifetime ed.) § 929, pp. 857, 858.)

Powers of appointment have been recognized as valid in this state ever since the decision of *Estate of Sloan*, 7 Cal. App.2d 319 [46 P.2d 1007]. See *Estate of Carter*, 47 Cal.2d 200, 207 [302 P.2d 301]; *Estate of Masson*, 142 Cal.App.2d 510, 512 [298 P.2d 619]; *Estate of Elston*, 32 Cal.App.2d 652, 659 [90 P.2d 608]; *Estate of Kalt*, 16 Cal.2d 807, 812 [108 P.2d 401, 133 A.L.R. 1424].

Though urged upon him, the trial judge ignored the proposition that the writing created a valid power of appointment. The question considered below was whether there was an outright gift to Hayter and McQuarrie followed by precatory words. But solution of the question of existence of a power of appointment is the proper approach to this case. The language of *Estate of Sloan, supra*, 7 Cal.App.2d 319, 341-342, is pertinent: "As has been announced in numerous decisions, the word 'precatory' is properly applied to an expression by a trustor wherein a hope, a wish, a desire, a recommendation, or a request is indicated by him. Necessarily, the words by which a precatory trust is created constitute an entreaty; and is beseeching, or suppliant, or prayerful in its nature. . . . Considering the language employed by the donor of the power in the instant matter, even by viewing it in the light of the most auspicious authorities to which the attention of this court has been directed, it is impossible to give to such language a construction which would admit of a conclusion favorable to the suggestion made by appellants to the effect that it is precatory in character. The donor's required disposition of his estate was plain, direct and conclusive. It constituted not an entreaty, nor a wish, a desire, a request, a recommendation, or anything of that sort. It is most apparent that the power created by its donor was mandatory."

The donee of a general power of appointment may exercise it in his own favor. In legal effect such a power gives him an absolute ownership. (*Estate of Carter, supra*, 47

Cal.2d 200, 207; *Estate of Kalt, supra,* 16 Cal.2d 807, 812; *Estate of Masson, supra,* 142 Cal.App.2d 510, 512; *Dallapi* v. *Campbell,* 45 Cal.App.2d 541, 547 [114 P.2d 646].)

■ Respondents argue that a power such as the one at bar is invalid because it delegates to another the authority to make a will for the testatrix, thus evading the statutes relating to the making of wills. The California cases above cited involve the distribution of a part of the property or less than the entire estate in decedent's property, and hold such a power to be valid. The underlying theory is that the subject matter passes from the donor's estate directly to the appointee and not from the donee or his estate. (*Estate of Baird,* 120 Cal.App.2d 219, 227 [260 P.2d 1052]; *Estate of Masson, supra,* 142 Cal.App.2d 510, 512; 39 Cal.Jur.2d, § 3, p. 613.) In one sense a power to dispose of a part of testatrix' property through an appointment to a third person does amount to the making of a will for her *pro tanto.* But the legal concept is to the contrary. There appears to be no difference in principle between a power to appoint the taker of a part of testatrix' property and a power to so dispose of all of it.

Respondent cites and quotes a discussion of *"Delegation of Will-making Power"* by D. M. Gordon, 69 Law Quarterly Review (1953), page 334. The author definitely concludes that the English cases have not held invalid a power such as the one now under consideration, although the language of certain decisions is critical of same. At page 335 he says: ''But let us consider this situation: A makes a will that simply says: I appoint B my executor and give all my property to such persons as he shall appoint. It seems hard to claim that this would be in compliance with the Wills Act. A does not express his own will at all; he leaves that to B. What A signs is a mere shell; the real will is made for him by B after A's death. So such a will seems unsustainable; but actually no such will has ever been invalidated by the courts; and unless delegation per se is a fatal objection, which has never been expressly decided, there is no principle that can be laid hold of as showing the will could be successfully attacked.

''True, there are cases in which wills not differing greatly from A's have been held bad; but in each of these the court laid hold of some factor not to be found in A's will, as a pretext for so holding. These factors were held to make the wills uncertain; but there would be no real uncertainty in A's will; and nothing but a rule against delegation *per se* would make it bad.''

At 344: "So no good reason has ever been offered why, if general powers of appointment are bad as delegation of will-making, special powers should be treated otherwise. It cannot seriously be argued that exercise of a special power of appointment is not will-making, even if the delegation is slightly narrower than that under a general power."

At 345: "We have already seen that if the courts should break with the past and recognize a general rule that testators cannot delegate will-making, then logically they cannot compromise between (a) holding against all powers of appointment in wills, and (b) allowing the most unrestricted use by testators of both special and general powers, provided only that these are not uncertain. There can be no middle course if neither general nor special powers can be exceptions to a general rule against the use of powers."

Most courts in this country which have been confronted with our present inquiry have held the general power to be valid though covering all or substantially all of decedent's estate. In *In re Tinsley's Will*, 187 Iowa 23 [174 N.W. 4, 5, 11 A.L.R. 826], the entire content of the will was as follows: "In case of any serious accident, after my just debts are paid, I direct that my aunt Miss Mary E. Clark, take entire charge of my estate for disposal as she sees fit. J. Clark Tinsley." The sixth objection to its probate was: "[I]t leaves the disposal of property to another person. The decedent did not by said instrument, and could not, delegate to an agent the power to make a will for him." It was held that this document was testamentary in character, the court saying at page 6: "Any writing by which a person undertakes to make disposition of his property or estate to take effect after his death is testamentary in character, and, if duly signed, witnessed, and published, is entitled to admission to probate. . . . Unrestricted power of disposal is an attribute of absolute ownership. Quite in point, also, is *Cheney* v. *Plumb*, 79 Wis. 602 [48 N.W. 668], where the instrument was in form as follows: 'When I have done with my property, I want John R. Cheney and his wife to pay all my debts and collect my dues and dispose of my things as they think best, only I want Sarah A. Williams to have my silver spoons . . . (and after several legacies) and the remainder to keep and dispose of as they think best.' This was held sufficient to vest the property absolutely in the persons named. See also *Benz* v. *Fabian*, 54 N.J.Eq. 615 [35 A. 760]. And the trial court was justified in holding the instrument testamentary in form, and not a mere trust or power

expiring with the death of Mary E. Clark, there is no room to doubt.''

*Baldwin* v. *Davidson,* 37 Tenn.App. 606 [267 S.W.2d 756], involved this clause of a will: '' 'B. W. Davidson, Sr. shall turn over to my Sister Mrs. O. P. Brakefield my share to be distributed as she shall see fit.' '' The word ''share'' referred to his interest in a certain business. This language was held to create a power of appointment which could be exercised in the donee's own favor; also held that it amounted to an absolute gift of the property to her (pp. 757-758).

*Appeal of Richburg,* 148 Me. 323 [92 A.2d 724]. The will contained this provision: '' 'I direct my executor to dispose of my clothing and other personal articles and effects as he in his sole discretion may deem best.' '' (P. 725.) This language was held to create a valid power of appointment. At page 726 the court said: ''The appellant argues that assuming the executor would not take whatever property might pass under the Second Paragraph of the will to his own use, and for his own benefit, it cannot be doubted that the language thereof gives him a power of appointment over it. This Court said very recently, *Estate of Meier,* 144 Me. 358, 362 [69 A.2d 664, 666], 'that the power of disposition of property ''is the equivalent of ownership,'' ' and it cannot be doubted that under the terms of the Second Paragraph, the executor was given 'power of disposition' over such articles as might fit the description of property therein. The title thereto would vest in him, under the will, and remain with him until he passed it elsewhere. . . . Conceivably, he may have used the words 'dispose of' in the sense of 'destroy,' assuming the property in question had no monetary value, but this Court cannot rewrite the document for him, and his words have the very definite, well-established meaning in testamentary use which the appellant ascribes to them.''

*In re Lidston's Estate, supra,* 32 Wn. 2d 408 [202 P.2d 259, 261] : '' 'I further direct my Executor dispose of any balance after the aforementioned gifts have been paid according to his wise discretion.' '' The executor proposed to distribute the property to his own wife and two other persons. The lower court held that this part of the will was not testamentary and the ruling was reversed. The difference between a power and a trust was explained at page 266, where it was said : ''No technical, special, or particular form of words is necessary for the creation of a power of appointment; if the

testator's intention to confer the power appears from the entire will, full effect will be given to such intention. In Thompson, Wills, 588, section 394, the rule as supported by the authorities is stated as follows: 'No particular form of words is necessary for the creation of a power; any expression, however informal, being sufficient if it clearly indicates an intention to give a power. All that is necessary is an indication of a clear intention to accomplish some proper purpose by the donor through the donee. It may be conferred by express words, or may be necessarily implied. . . .' " It was also remarked on that same page that: "It seems to us that as a layman the testator could hardly have used more appropriate language to express his intention to confer upon his executor the power to dispose of the residuum of the estate in a manner determinable by him."

Respondents cannot prevail upon the argument that the use of the word "notify" or the giving of Mrs. McQuarrie's telephone number in the second paragraph of the writing indicates a sense of urgency, or that deceased used the words "dispose of my belongings" in the sense of authorizing Hayter and McQuarrie to transfer her personal effects, jewelry and removable objects to a place of safekeeping in order to protect them from falling into the hands of the daughters-in-law. Nothing but speculation underlies that argument. It is true that the word "dispose" is: "A broad and comprehensive term, with many shades of meaning, described as "nomen generalissimum,' and standing by itself, without qualification, . . . has been said to have no technical signification." (27 C.J.S. p. 345.) But it has a familiar meaning when used in wills, as is evident from the quotations of the Richburg, Tinsley and Lidston cases, *supra*.

What Mrs. Kuttler obviously desired was that her donees have the power to distribute her "belongings" if she should die before executing a new and formal will. To say that she wanted something less is to deny the obvious. Of course, the fact that she expected to make a later and more formal will would not detract from the testamentary character of the one in question. (*Richberg* v. *Robbins*, 33 Tenn.App. 66 [228 S.W.2d 1019, 1022]; *Henderson* v. *Henderson*, 183 Va. 663 [33 S.E. 2d 181, 183]; 1 Page on Wills (Lifetime ed.) § 50, p. 112; 94 C.J.S. § 129, p. 905.)

Upon the issue of whether the writing should be probated, it is unnecessary to consider whether the term "belongings"

as used therein would include decedent's real estate, because a document may be a will although it disposes of only part of the testator's property. Intestacy as to a portion of the decedent's estate is a familiar situation.

However, this question must be determined in connection with the appeals involving the right to letters. (All matters on appeal are included in a written order signed by the judge and filed on October 23, 1956.) Appellant Hayter applied for letters testamentary; that petition was denied and he appeals from the ruling. Appellant Bertha McQuarrie applied for letters of administration with the will annexed and appeals from the portion of the said order which denies her application. Michael M. Kuttler, as general guardian for minor grandchildren Joan Perry Kuttler and William Brent Kuttler, and as guardian ad litem for the other grandchild, Nancy Ann Kuttler, petitioned for letters of administration; this petition was granted and Hayter and McQuarrie appeal from that ruling.

The will names no executor, nor does it appoint one according to the tenor. (See 20 Cal.Jur.2d, § 115, p. 166.) Moreover, a holding that the second paragraph of the document confers a power of appointment upon Hayter and McQuarrie precludes a further ruling that they were thereby appointed executors; the two interpretations are mutually exclusive. The denial of Hayter's petition for letters testamentary must be affirmed.

The conflicting petitions of McQuarrie and of Michael M. Kuttler, as guardian, for letters of administration require solution of the question whether the phrase "my belongings" embraces decedent's entire estate, including her real property. This follows from the fact that Probate Code, sections 409 and 422, give the grandchildren priority of right over a sister and over Hayter ("Any person legally competent"), provided that the grandchildren "are entitled to succeed to the estate or some portion thereof" (20 Cal.Jur.2d, § 122, p. 175.) If the will does not dispose of the realty the grandchildren do succeed as heirs to that portion of the estate, and their guardian is entitled to letters c.t.a. in preference to Mrs. McQuarrie (20 Cal.Jur.2d, § 122, p. 176), for he stands in the same position with respect to letters as do his wards. (20 Cal.Jur.2d § 102, p. 150, § 140, p. 204.) But if the phrase "my belongings" includes realty, the grandchildren take nothing and appellant McQuarrie has the better right to letters of admin-

istration. In order to solve this problem a present construction of that phase of the will is inescapable.[2]

The phrase "my belongings" may take on varied hues of meaning according to its matrix. Here there is nothing to indicate an intention to limit it to a portion of decedent's assets. She doubtless recognized, after the explanation made by her lawyer that she could not disinherit her grandchildren without giving the property to someone else, that they would take any part of her property that the will did not dispose of. Her obvious intent in making this stop-gap will was to prevent inheritance by the grandchildren or their mothers. The document must be so read as to effectuate that intent, if possible.

In *Estate of Schuster*, 137 Cal.App.2d 125 [289 P.2d 847], this court had under consideration the phrase "any and all the rest of my effects," as used in a holographic will. It affirmed a ruling that this was a bequest of the residuary estate rather than a disposition of clothing, furniture, paintings and other purely personal items not specifically bequeathed. At page 129, it is said: "While the primary meaning of 'effects' is personal property, it is a very general term and may include real property where that appears to be the intent of the testator. Whether it includes the latter class of property depends on the context of the will and the surrounding circumstances."

In *Estate of Olson*, 144 Cal.App.2d 694 [301 P.2d 501], the holographic will said: "I want Inez my Daughter to have all My Personal belongings." A finding that this language made effective disposition of all of decedent's estate remaining after payment of a legacy of one dollar to decedent's son was affirmed. The court said, at page 696: "It is apparent from the instrument that the words of the testatrix specifically disinherited her son, and it was her desire and intent to avoid intestacy and leave her entire estate to her daughter by the words 'all My Personal belongings.' The very fact that the testatrix made a will raises a presumption that she intended to dispose of all of her property. (Prob. Code, § 102; *Estate of Akeley, supra* [35 Cal.2d 26 (215 P.2d 921, 17 A.L.R.2d 647)]; *Estate of Olsen*, 9 Cal.App.2d 374 [50 P.2d 70].) Whenever a disputed word or phrase may be reasonably given either of two meanings, that meaning should be given

---

[2]What its effect will be upon later proceedings, such as petition for distribution, is not before us. (See *Estate of Nicoll*, 79 Cal.App.2d 48, 53 [179 P.2d 95].)

which will prevent intestacy, either entire or partial. (*Estate of Soulie,* 72 Cal.App.2d 332 [164 P.2d 565].)

"In examining the will by its four corners and in the light of these rules, it does appear that the words 'all My Personal belongings,' as used in it, were susceptible of meaning 'all of my own property.'

"In *Estate of Kruger,* 55 Cal.App.2d 619, 624 [131 P.2d 619], in discussing a will where the word 'belongings' was used, the court said:

" 'The word "belongings" used by the testator with reference to the bequest to his wife, is generally understood as including the property that one owns, and it is not infrequently used in that broad sense; and in the instant case we feel that the word may reasonably be used to include all of the testator's remaining property when we consider how the word "belongings" is ordinarily understood by the lay mind.' " At page 697: "Ballantine's Law Dictionary [Supp. 1954] in discussing the word 'belongings' says: 'Although the word (belongings) as used in a will, has, on occasion, been restricted to such chattels as are peculiarly attached to the person, it has more frequently been construed broadly, under the language of the particular wills involved, to include personal property of every nature and even real estate.' "

*In re Churchfield's Will,* 99 Misc. 682 [165 N.Y.S. 1073] (Sur. Ct.), the will said: "I request all my belongings, money, bonds and insurance to be left to my wife, Marian Churchfield, and my two children, William H. Churchfield and Mary Margate Churchfield." After it was executed decedent acquired real property and the question was whether it passed by this testament. "The common usage of the word 'belongings,' at least by a lay mind, includes all property, whether real or personal, and there is nothing in this will to show a contrary intent. By giving all the balance of his 'belongings' to his wife, testator meant to give all the remainder of his property to her; the words 'belong' and 'belongings' having been used several times in the will. . . . There can be no doubt but that this testator intended in language plain and simple to make his wife and two children the recipients of his bounty, share and share alike. The will in question is a valid will, both as to realty and personalty, and should be admitted as such." (*In re Churchfield's Will, supra,* p. 1074 [165 N.Y.S.].)

If the phrase "my belongings" were construed as excluding realty, Mrs. Kuttler would have died intestate as to more than one-third of her holdings, according to probate valuation.

There is a presumption against intestacy, total or partial, which is very strong. [redacted] "There is a presumption that a testator intends to dispose of all of his property in the absence of controlling language in the will to the contrary. [Citations.] [redacted] In construing the will it was proper for the trial court to take this presumption against partial intestacy into consideration. [Citations.]" (*Estate of Schuster, supra,* 137 Cal.App.2d 125, 130.) [redacted] "With respect to such a situation, many decisions of this state provide authority for the rule that where by the terms of a will it is not made clear nor certain that intestacy—whether partial or total—was intended, an interpretation which will avoid intestacy will be adopted. [Citations.] [redacted] Also, it has been judicially declared that 'The very fact of making a will raises a presumption that the testatrix intended to dispose of all of her property.' [Citations.] [redacted] And in the case last cited, the court reiterated the rule that 'Whenever a disputed word or phrase may be reasonably given either of two meanings, that meaning should be given which will prevent intestacy . . . [citations].' [redacted] Constructions which lead either to total or partial intestacy are not favored. [Citation.]" (*Estate of Northcutt,* 16 Cal.2d 683, 689-690 [107 P.2d 607].) [redacted] Of course, this presumption amounts to evidence of the absence of any intention to die intestate as to the realty. There is nothing in the instant record to contradict it and it therefore must prevail. Appellant McQuarrie is entitled to letters of administration with the will annexed and the order appointing Kuttler as administrator is erroneous.

The order of October 23, 1956, is affirmed with respect to the denial of appellant Hayter's petition for letters testamentary; in all other respects it is reversed with instructions to admit to probate the holographic document of February 16, 1956, to vacate the order appointing Kuttler as administrator, and to make an order granting to appellant McQuarrie letters of administration with the will annexed.

Herndon, J., concurred.

KINCAID, J. pro tem.,*—I dissent. I cannot agree that we are compelled to conclude that Mrs. Kuttler intended the document in question to operate as her will over the contrary finding of the trial court.

Appellants assume and the majority opinion seems to hold

*Assigned by Chairman of Judicial Council.

that because no conflicting testimony was introduced by respondents the trial court must accept appellants' testimony at the value placed upon it by appellants, and if the trial court did not do so it was "disregarding" that evidence. Such is not necessarily the case. In evaluating appellants' testimony the trial court was entitled to, and did, consider the manner in which the witnesses testified, the character of their testimony and their motives, and to weigh the testimony against words in the document in question, and other facts in the record. The fact that there was no conflicting testimony introduced by respondents did not prevent the trial court from disbelieving part or all of appellants' testimony. (Code Civ. Proc., § 1847; *Huth* v. *Katz* (1947), 30 Cal.2d 605, 608-609 [184 P.2d 521]; *Odenthal* v. *Lee* (1952), 113 Cal.App.2d 666, 669 [248 P.2d 937].)

Where such testimony was susceptible of different inferences, the trial court was entitled to draw the inference it thought applicable and, unless clearly arbitrary, such inference so drawn by the trier of fact is binding on the appellate court. (*Juchert* v. *California Water Service Co.* (1940), 16 Cal.2d 500, 508 [106 P.2d 886].)

While no particular words are necessary to show testamentary intent it is well established that before an instrument is entitled to be admitted to probate, excepting as hereinafter noted, it must satisfactorily appear from the instrument offered as the last will and testament that the decedent intended, by the very paper itself, to make a disposition of his property after his death in favor of the party claiming thereunder. (*Estate of Wunderle,* 30 Cal.2d 274, 280, 281 [181 P.2d 874].) The exception to this rule is that the mere nomination of an executor, without making disposition of the estate by giving any legacy or devising any part of the property, constitutes a will that, if it otherwise qualifies, is entitled to be admitted to probate. "It may often occur that, subject to the payment of his just debts, a testator is quite willing that his property shall be succeeded to as provided by law, while the selection of the minister through whom the settlement is to be made and the distribution is to be had is not only a matter of deep interest to him, but of vital interest to the estate; and as the law accords to him the privilege of making the selection of his executor, it must be upheld when duly made" (*In re Hickman,* 101 Cal. 609, 613 [36 P. 118]). (See *Estate of Selditch,* 91 Cal.App.2d 62, 67 [204 P.2d 364].)

A document may be entirely dated, written and signed by a person and yet not be his holographic will. Even though an instrument is intended to be effective upon the death of the author thereof, if on its face it disposes of no property and nominates no executor, it is not testamentary in character and is not entitled to be admitted to probate. (*Estate of Meade,* 118 Cal. 428, 430, 431 [50 P. 541, 62 Am.St.Rep. 244].)

It is also well settled that in order for an heir to be disinherited, the testator must leave a will which not only evidences an intent to disinherit but which also makes a valid disposition of his property. (*Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201, 207 [92 P. 184]; *Estate of Heney,* 66 Cal.App.2d 867, 869 [153 P.2d 427]; *Estate of Dunn,* 120 Cal.2d 294, 295 [260 P.2d 964].)

An analysis of the document in question discloses that it is entirely written, dated and signed by the decedent and is addressed: ''To whom it may concern:'' This heading is not necessarily inconsistent with a proper form of will if testamentary provisions follow. The document then reads: ''If at any time I should pass on before I have a recorded will this is to certify that I do not want Mike Kuttler or Vera Kuttler, my deceased sons' wives to have one thing or one cent of what I have: nor the children Joan, Bill or Nancy Ann as I never see them so I enjoy no pleasure from them.'' This paragraph is clearly intended to disinherit the persons named and might be effective for this purpose if the decedent later in the document makes a valid disposition of her property.

Then follows: ''Notify Earl Hayter or my sister Bertha McQuarrie Do. 7-7821—for them to dispose of my belongings as they see fit. Signed Mrs. Ethel May Kuttler 2/16/56.''

The first paragraph wherein the decedent indicates her desire to disinherit certain of her heirs is specific, positive and inclusive. She recognized the meaning of the words ''to have'' to indicate the taking of possession by way of ownership when she declared she did not want these persons ''to have one thing or one cent of what I have.'' In contrast the last paragraph is unclear as to meaning and is not inclusive. There is no word or indication of gift, bequest, devise or valid disposition to Hayter, McQuarrie or anyone. Instead of the inclusive words ''one thing or one cent of what I have'' the decedent uses the term ''belongings.'' The nebulous ''To whom it may concern . . . Notify Earl Hayter or my sister Bertha McQuarrie . . . —for them to dispose of my belongings as they see fit,'' is lacking in dispositive verbiage.

If the decedent had finally made up her mind how she wanted her property to go and had decided to give it to McQuarrie and Hayter by the instrument in question, intending it to be a will, decedent would undoubtedly, in the light of her language in the first paragraph, have said that she wanted Hayter and McQuarrie to have everything she had, or all her property, or words importing a gift or bequest to them.

The paragraph requesting notification to Hayter or McQuarrie to dispose of her belongings as they see fit may have been an afterthought prompted by a desire to have someone transfer her personal effects, jewelry and removable objects about the house to a safe place immediately upon her death to keep them from falling into the hands of the daughters-in-law until an administrator had been appointed to take them over. Such an inference gives a logical explanation for the presence of McQuarrie's telephone number in the request to notify. Hayter lived next door to decedent. The presence of the telephone number indicates urgency. It is inseparably tied in with notification to dispose of belongings. There could be no urgency if decedent meant by that paragraph to give the "belongings" to Hayter or McQuarrie, or for them to give them to anyone else. But urgency could be called for if she used the word "dispose" in the sense of "transfer" or "remove" until an administrator had been appointed. That urgency might relate only to personal effects because real estate would already be safe, thus explaining the use of the word "belongings."

When the language used is coupled with the testimony that just eight days before she wrote the instrument she had not yet decided how she wanted her property to go, the most logical explanation for the instrument seems to be that it was intended only to exclude the daughters-in-law and the children from a share in her estate if decedent died before she made a will; that otherwise she was content to have her property go by intestacy. In furtherance of that interpretation the evidence showed that decedent had two brothers besides her sister, Bertha McQuarrie. There is nothing in the record to indicate that decedent had any preference for her sister Bertha over those two brothers; to suggest any reason why McQuarrie should have been favored over those equally natural objects of decedent's bounty, or to suggest that decedent was contemplating excluding those brothers from a share in her estate.

Under those circumstances the inference is logical that until she had a "recorded" will decedent was content to let her estate pass by intestate succession, after excluding the daughters-in-law and children from any share in her estate.

As far as respondent grandchildren are concerned, that purpose was, of course, frustrated by the rule of law heretofore stated that, in order for an heir to be disinherited a will must be left which additionally makes a valid disposition of the property of the testator.

The words in the document before us and which appellants contend are dispositive in meaning and effect may be compared to some extent with those in a holographic will in *Estate of Maloney*, 27 Cal.App.2d 332 [80 P.2d 998]. There the decedent made specific bequests and concluded the will as follows (p. 333): "I wish for Mrs. Sarah Collins to doe wat she know I like done if any is left." The will was admitted to probate but upon distribution the probate court held there was an intestacy as to the residue. Sarah Collins appealed claiming that the above quoted language made a gift of the residue to her. The court upheld the decision of the probate court that a trust was intended but that it failed for uncertainty. The appellant cited rules to the effect that an interpretation which favors testacy is preferred over one which results in intestacy, and that the intention of the testator must be given effect as far as possible and contended that in view of those rules the language of the residuary clause quoted was effective to give her the residue. This contention was answered by the court as follows (p. 336): "We are of the opinion, however, that to so hold would be to enter the field of conjecture and amount to a rewriting of the testatrix's will; and it is well established that neither indulgence in speculation nor conjecture as to what a testatrix's intention was affords proper basis for a decree of distribution (citation) ; nor is a court permitted to adopt a construction founded on conjecture or to supply an omission by rewriting a will in order to avoid a conclusion of partial intestacy. (Citation.)"

The rule of law that favors testacy as against intestacy only operates when the existence of testamentary intent has already been ascertained and the subject matter of the doubt is one of construction. "Where there is a doubt as to the existence of the *animus testandi* the rule in favor of testacy is not applicable." (*Estate of Anthony*, 21 Cal.App. 157, 161 [131 P. 96] ; *Estate of Blain*, 140 Cal.App.2d 917, 922-923 [295 P.2d 898].)

"When words which may be construed as testamentary are used in an informal document such as a letter, and it is not entirely clear that the writer intends thereby to control the disposition of his property at his death, the courts have been very liberal in admitting extrinsic evidence to show intent." (*Estate of Golder*, 31 Cal.2d 848, 850 [193 P.2d 465]; see *Estate of Sargavak*, 35 Cal.2d 93, 96, 97 [216 P.2d 850, 21 A.L.R.2d 307].) Extrinsic evidence was here received by the court for the purpose of ascertaining the intent with which the instrument was executed. That this evidence, in addition to the terms of the instrument itself, was fully considered is conclusively indicated by the written findings of fact and conclusions of law of the court wherein it is stated: "Documentary and oral evidence was introduced . . . and the court having duly considered the evidence . . . and having ordered a judgment in favor of contestants, now makes the following Findings . . ." Here there is a specific finding after evidence taken of a lack of testamentary intent and from that, as well as the terms of the document in question, I feel that we are not justified in assuming the existence of such an intent.

Nor do I agree that by the use of the words contained in the last paragraph of the document a power of appointment was conferred upon McQuarrie and Hayter with respect to her "belongings" or at all. There are no words of conferral of a power of appointment. Nor are there any words of gift or similar import to any possible appointee under any power. The language does not transfer title to anything to appellants. It does not say they may keep or dispose. It does not even say they "may" dispose. Appellants apparently imply such words from the direction to "dispose."

The instrument is not even addressed to appellants, but is addressed to "whom it may concern" as a direction to "notify" Earl Hayter or Bertha McQuarrie for them to dispose of decedent's "belongings" as they see fit.

The object to be searched for in interpreting an instrument is the intention of the writer of the instrument. Appellants assert that the intention was to give them the property absolutely. But if that be so, why didn't the decedent say that? In the ordinary and normal course of events, a testator, if he wants to leave property to A and B, does not leave a writing addressed to "whom it may concern" directing that A or B be notified for them to "dispose" of the property as they see fit. The language of the instrument shows that the decedent had no difficulty in expressing herself in writing. And, as here-

tofore pointed out, the tenor of the first paragraph indicates that had she intended to leave all her property to Bertha McQuarrie and Earl Hayter, she would have used language in the same vein, leaving "everything I have," or words of similar import, to them. In the light of that uncertainty, the words of the Supreme Court of Alabama in a somewhat similar case, *Parrish* v. *Gamble*, 234 Ala. 220 [174 So. 303], are of interest. The instrument in that case was as follows:

"Feb. 10, 1934.

"My last Will and Testament:

"To my beloved Nephew Joseph Parrish, I give full authority to divide my small estate, as requested in a separate paper, not to be probated. He will give no bond, and be guided only by his unfailing good judgment, and unquestioned integrity.

"Grace B. Evans

"Dollie Twilly
"Carrie Sanders"

Since the instrument was headed as it was, unlike the one before us, there was no question as to the testamentary intent. The contention was made that the will clothed Joseph Parrish with an absolute power of disposition. In rejecting that contention the court said (pp. 306-307 [174 So.]): "We concur in the view of the trial court that this will, on its face, or with the aid of the documents mentioned, cannot be construed to vest an absolute power of disposition in Joseph Parrish, either to be performed as executor, or under a power apart from the office of executor; nor a power of appointment, carrying authority to name the beneficiaries among the heirs as a class, or to prescribe what share each shall take.

"Such powers, virtually substituting the donee of the power for the testator, in naming the objects of his bounty, or the shares each shall take, is not to be inferred except from clear and unequivocal language, or evidence admissible to make such intent clear. *Pearce* v. *Pearce*, 199 Ala. 491-506 [74 So. 952]. The will makes no disposition of the estate; it descended as in case of intestacy."

The Restatement of the Law of Property under the subject of "Powers of Appointment," section 323, comment e, says:

"Occasionally a testator provides that certain property shall pass to his executors and adds 'to be distributed by them as they deem advisable' or 'to be disposed of as they think will be in accordance with my wishes,' or some similar clause. Such a clause may have one of several legal effects. (1) If, as a

matter of construction, it is determined that the testator intended the executors to benefit personally from the gift, such a clause may be held (a) to be an outright gift to the executors, or (b) to create in the executors a general power of appointment presently exercisable. The former holding is rarely justified since it necessarily treats as surplusage the words of the will which provide for distribution and hence violates the canon of construction that all words of a will are to be given effect if possible. (2) If, as a matter of construction, it is determined that the testator did not intend the executors to benefit personally from the gift, such a clause is an attempted trust for indefinite beneficiaries and hence void (see Restatement of Trusts, § 122). Conceivably such a clause could be held to create a power to appoint the property to any persons other than the executors; *but it is on the whole preferable to allow the property to pass as a part of the residue or by intestacy rather than to attempt to carry out a highly doubtful testamentary intent by any such unusual device."* (Emphasis added.)

It is highly doubtful that the instrument in question was intended to be testamentary in character. How much more uncertain as to intent then is this instrument as compared with the one in the Parrish case where there was expressed testamentary intent, or the clauses mentioned in the Restatement of Property quotation where such clauses are assumed to be part of an admitted will.

Hayter contends that the document under consideration appoints appellants as executors. He argues that the last paragraph serves to name appellants as both beneficiaries and as executors by the exact same language.

The word "executor" does not appear in the instrument offered. Since no person is expressly named as executor, the question must be decided upon the evidence as a whole and on principles of law relating to the appointment of an executor according to the tenor of the instrument. As was said in *Estate of Clary,* 98 Cal.App.2d 524, 526 [220 P.2d 754] : "Whether a writing purporting to be the last will of a decedent has with sufficient clarity designated a specific person to act as executor of his will must be determined by familiar rules for the interpretation of such documents. A holographic will must be perused for the purpose of determining the intention of the testator. In order to ascertain such intention, the document must be read in view of the circumstances under

which it was written, the words must be given their ordinary grammatical sense and all parts of the writing must be considered in relation to one another. (Citation.)

"The appointment of an executor 'according to tenor' is not regarded with favor. While the decision of any case must be based upon its own facts, unless the court can conclude from the words of the testator that the latter intended for his devisee to take charge of the estate, collect its assets, pay its debts and perform the usual functions of an executor, it is error to appoint such devisee. . . . The foregoing rule is firmly established by the decisions of California and other jurisdictions." (See also *Estate of Dern,* 114 Cal.App.2d 799, 800, 801 [251 P.2d 28].)

Appellants are not directed by the instrument in question to "take charge of the estate," to "collect the assets of the estate," or "liquidate indebtedness of the estate" or to "do what is necessary to distribute the estate."

Indeed, the instrument is not even addressed to appellants but "To whom it may concern." The word "notify" may properly be construed to infer that the decedent intended the instrument to be only instructions to her friends and not a testamentary appointment of them as her executors.

In a contested proceeding in probate the limitations imposed upon an appellate court's review of the facts are the same as in any other civil case. In reviewing the evidence all conflicts must be resolved in favor of respondents, and all legitimate and reasonable inferences indulged in to uphold the judgment if possible. (*Estate of Blain, supra,* 140 Cal.App. 2d 917, 920 [295 P.2d 898].) Viewed in this light, I feel that there is substantial evidence to support the trial court's findings and I would therefore vote to affirm the judgment.

A petition for a rehearing was denied June 6, 1958. Kincaid, J. pro tem.,* was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied July 9, 1958.

---

*Assigned by Chairman of Judicial Council.