[L.A. No. 29783. In Bank. Feb. 9, 1971.]

Estate of W. S. ROSECRANS, Deceased.
HOUSTON I. FLOURNOY, as State Controller,
Petitioner and Respondent, v.
CROCKER-CITIZENS NATIONAL BANK,
as Executor, etc., Objector and Appellant.

COUNSEL

Gibson, Dunn & Crutcher and Bert A. Lewis for Objector and Appellant.

Myron Siedorf, Walter H. Miller and James R. Birnberg for Petitioner and Respondent.

OPINION

**BURKE, J.**—The executor of the last will and testament of W. S. Rosecrans (decedent) appeals from an order of the superior court, sitting in probate, overruling the executor's objections to the report of the inheritance tax appraiser and fixing the inheritance tax in accordance with that report. As will appear, we have concluded that the court below correctly ruled that the language of a trust instrument upon which the tax issue turned gave decedent only a power of appointment over the trust property, and that the order should be affirmed.

In May 1938 decedent's mother, Lillian T. Rosecrans, executed an instrument which created a revocable, *inter vivos* trust, called the "Lillian T. Rosecrans Trust," the pertinent provisions of which are set forth in the margin.[1]

Lillian T. Rosecrans predeceased W. S. Rosecrans, leaving him and his sister Carmelita as the two named trustees and beneficiaries of the Lillian T. Rosecrans Trust. W. S. Rosecrans died in July 1965. At the time of the order here involved Carmelita Rosecrans was still living and the trust had not yet terminated.

In March 1960 decedent had created a trust called the W. S. Rosecrans Trust, under the terms of which he was to receive the income of the trust during his lifetime; and upon his death his surviving wife was

---

[1]"SEVENTH. The trustees of 'The Lillian T. Rosecrans Trust' shall pay all of the net income of the trust to the trustor during her life, and after the death of the trustor all income of the trust shall be added to and become principal.

"The trustees . . . shall pay from principal so augmented whatever sums they may determine and at whatever time or times they may determine, in equal amounts, to W. S. Rosecrans and [his sister] Carmelita E. Rosecrans, or, if either be deceased, to the heirs, devisees and legatees of such deceased person, subject to the administration of his or her estate.

"EIGHTH. On the termination of this trust all property thereof . . . shall be divided into two equal parts; one part shall be distributed to the heirs, devisees and legatees of W. S. Rosecrans, subject to the administration of his estate; the other part shall be distributed to the heirs, devisees and legatees of Carmelita E. Rosecrans, subject to the administration of her estate."

to receive from the trust an amount equal to one-half of all his separate property, including in the total of separate property for the purpose of computing such one-half, the decedent's one-half interest in the Lillian T. Rosecrans Trust.

Decedent in article sixth of his last will and testament[2] left his residuary probate estate, including specifically his interest in the Lillian T. Rosecrans Trust, to the Rosecrans Foundation.

The effect of these various transactions is: (a) decedent's interest in the Lillian T. Rosecrans Trust passes to the Rosecrans Foundation and, since that entity is a qualified charity, no inheritance tax is due on the transfer to it (see §§ 13841, 13842, Rev. & Tax. Code); (b) because of the nature of the W. S. Rosecrans Trust, the widow's distributive share from that trust is taxable to the same extent as though it had been transferred to her as a devisee or legatee under decedent's will. In computing the inheritance tax due because of the transfer to the widow, she is entitled to the so-called "marital exemption," of the value of one-half of decedent's separate property, provided for in section 13805 of the Revenue and Taxation Code.[3]

The primary issue in this case is the amount of the exemption so granted. If decedent's interest in the Lillian T. Rosecrans Trust (valued at $879,303.83) is included in the total value of the decedent's separate property which is to be halved in calculating the marital exemption, then the inheritance tax payable on account of the transfers to the widow will be some $40,000 less than that imposed by the order from which this appeal is taken. In our view the trial court correctly ruled that decedent's interest in that trust should *not* be so included.

The executor agrees that the inheritance tax in this case is governed by the law as it existed at the time of decedent's death, i.e., prior to the effective date of the 1965 amendments. (Stats. 1965, ch. 1070.) Likewise, it is not disputed, at least for purposes of this litigation, that (1) if decedent's interest in the Lillian T. Rosecrans Trust on the date of his

---

[2]Article Sixth: "I give, devise and bequeath all the rest, residue and remainder of my estate, including all failed and lapsed gifts, and including the entire interest of myself and my estate—the interest of my estate as used herein means the interest distributable to my heirs, devisees and legatees, subject to administration of my estate—in that certain trust called 'The Lillian T. Rosecrans Trust' . . . to the Rosecrans Foundation above described."

[3]Section 13805: "Property equal in amount to the clear market value of one-half of the decedent's separate property shall, if transferred to the spouse of the deceased, be exempt from the tax imposed by this part. A transfer, for the purpose of this exemption, shall include a transfer of property in trust with a general or limited power of appointment in the surviving spouse. This exemption shall be in addition to all other exemptions under this part."

death was a power of appointment and nothing more, then by inference his interest in that trust was not property "transferred" by him at his death, and would thus not be included in the calculation of the marital deduction under section 13805 (*ante,* fn. 3); but (2) on the other hand, if the interest was something more than or different from a power of appointment, it would be so included.[4]

 The executor contends that, contrary to the trial court's determination, there is "no power of appointment language in the Lillian T. Rosecrans Trust," that "No one is given a power or discretion to appoint to anyone." However, no particular form of words is necessary to create a power of appointment. (*Estate of Kuttler* (1958) 160 Cal.App. 2d 332, 334, 337 [7] [325 P.2d 624] and citations.) Thus, in *Kuttler* the language "Notify Earl Hayter or my sister Bertha McQuarrie . . . for them to dispose of my belongings as they see fit" was held to confer a power of appointment upon the two named persons. (P. 337 [2b] of 160 Cal.App.2d.)

 In the present case the language of the trust instrument (see fn. 1, *ante*) directed that the trustees (who were at the times here relevant W. S. and Carmelita E. Rosecrans) "shall pay from principal . . . whatever sums they may determine and at whatever time or times they may determine, in equal amounts, to W. S. Rosecrans and Carmelita E. Rosecrans, or, if either be deceased, to the heirs, devisees and legatees of such deceased person, subject to the administration of his or her estate," and that "On the termination of this trust all the property thereof . . . shall be divided into two equal parts; one part shall be distributed to the heirs,

---

[4]This proposition is based upon the following reasoning: (1) Only separate property that is "transferred" by a transfer subject to taxation under the inheritance tax law is included in the base on which the section 13805 exemption is computed; (2) At the time of decedent's death property transferred through exercise by the donee of a power of appointment was not a transfer subject to inheritance tax.

See *Estate of Newton* (1950) 35 Cal.2d 830 [221 P.2d 952, 19 A.L.R.2d 1399], for a history of the California statutory changes concerning taxation upon exercise of powers of appointment after 1917 and prior to the 1965 revision. Except as to the limited group of powers covered by the 1935 amendment of the predecessors to former section 13693, not here involved, a property transfer through exercise of a power was not subject to inheritance tax during the 30-year period between 1935 and 1965. (See Rev. & Tax. Code, § 13696, enacted in 1965, for the present rule.)

Additionally, section 13805, which provides for the marital exemption, refers to the "clear market value" of the separate property, and section 13312 defines "clear market value" as the value of property "included in any transfer." Under general principles, "property covered by the power is not part of the 'estate' of the donee or 'property which passes by will' of the donee . . . ." (Rest., Property, § 333, subd. (d), p. 1875.) That is, the property "transfer" is from the donor to the appointee; it is not "transferred" by the donee of the power. (See also *Estate of Masson* (1956) 142 Cal.App.2d 510, 512 [298 P.2d 619]; *Estate of Baird* (1955) 135 Cal.App.2d 333, 341-342 [11a, 11b] [287 P.2d 365].)

devisees and legatees of W. S. Rosecrans, subject to the administration of his estate; the other part shall be distributed to the heirs, devisees and legatees of Carmelita E. Rosecrans, subject to the administration of her estate."

The legal effect of the quoted provisions is indistinguishable from general powers of appointment. (See 72 C.J.S. 415-416.) The Legislature defined general powers of appointment for the first time in 1965 (Rev. & Tax. Code, § 13692), and it again defined such powers in similar terms in the Power of Appointment Act, effective July 1, 1970. (Civ. Code, § 1380.1 et seq.) The new act also provides that "Except to the extent that the common law rules governing powers of appointment are modified by statute, the common law as to powers of appointment is the law of this state." (Civ. Code, § 1380.1.) In determining whether an instrument executed before these statutory definitions were enacted (as was the trust instrument here involved) created a power of appointment at common law, it would appear that the statutory definitions provide relevant indicia of what the common law was. (See generally discussion in Witkin, Summary of Cal. Law, 1969 Supp., pp. 423-424.)

Insofar as here relevant, section 1381.2 of the new act appears to be in accord with the common law. It provides in pertinent part that "(a) A power of appointment is 'general' only to the extent that it is exercisable in favor of the donee, his estate, his creditors, or creditors of his estate, whether or not it is exercisable in favor of others. . . .

"(c) A power exercisable by the donee only in conjunction with a person having a substantial interest in the appointive property which is adverse to the exercise of the power in favor of the donee, his estate, his creditors, and creditors of his estate is not a general power."[5]

Under the quoted provisions both the decedent's power to invade corpus and his power to dispose of the remaining corpus by will are general powers, for his sister's right to veto an invasion of corpus under the *inter vivos* power could not be exercised for her own benefit. To hold, as the executor contends, that the combination of these general powers of appointment makes the power to appoint by will something more than a power of appointment is clearly not justified.

---

[5]The definition set forth in Revenue and Taxation Code section 13692, reads in pertinent part: " 'General power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, provided that the following shall not be deemed to be general powers of appointment: . . . . (c) A power not exercisable by the decedent except in conjunction with a person having a substantial interest in the property subject to the power, which is adverse to exercise of the power in favor of the decedent. . . ."

██ It is settled that a general power of appointment may be so unlimited as to give its holder rights equivalent to absolute ownership. (*Estate of Kuttler, supra,* 160 Cal.App.2d 332, 338-339, and cases cited; see 2 Witkin, Summary of Cal. Law (1960) Real Property, § 136, p. 984.)

██ Accordingly, had decedent in this case been given an unlimited power to appoint the corpus during his lifetime and an unlimited power to appoint any remaining corpus by will, his exercise of either power would not have been taxable. No ground whatever exists for reaching a different result when, as here, the power to invade corpus during decedent's lifetime was not unlimited but required his sister's concurrence in its exercise.

Cases cited by the executor differ in their facts and context and are not persuasive. For example, in *Estate of Johnson* (1965) 233 Cal.App.2d 785 [43 Cal.Rptr. 913], the language of the trust instrument gave the trust property to the trustor's daughter free of the trust upon the death of his wife.

██ Our conclusion that decedent held nothing more than a power of appointment renders it unnecessary to consider contentions concerning the effect of an order of partial distribution made by the probate court before the making of the order fixing inheritance tax.

The order appealed from is affirmed.

Wright, C. J., and McComb, J., Peters, J., Tobriner, J., and Mosk, J., concurred.

**SULLIVAN, J.**—I concur in the judgment.

Appellant's petition for a rehearing was denied March 9, 1971.