[Civ. No. 43394. Second Dist., Div. Two. Jan. 14, 1975.]

Estate of MINERVA JUNE LOBB SEVEGNEY, Deceased.
CLAUDETTE F. APPLEBAY et al., Claimants and Appellants, v.
SECURITY PACIFIC NATIONAL BANK, as Administrator, etc.,
et al., Objectors and Respondents.

468

---

**COUNSEL**

Griffith & Thornburgh, Peter J. Samuelson and John R. Rydell II for Claimants and Appellants.

Lynch & Nelson and William B. Lynch for Objectors and Respondents.

**OPINION**

**FLEMING, J.**—Relatives of Dennis Sevegney, the predeceased spouse of decedent Minerva Sevegney, appeal the judgment of the probate court determining that they have no claim of inheritance to Minerva's one-eleventh interest in four parcels of real property.[1]

At issue is the meaning of the word *property* in the statutory scheme for intestate succession.

The issue arose as follows: Joseph Archambeault owned the four parcels of California real property at his death in April 1936. By his will he placed the property in trust, making one-eleventh of the trust income payable to his nephew Dennis Sevegney, and giving Dennis a general testamentary power of appointment over a one-eleventh share of the trust property.[2] When Dennis died in November 1967, by his will he exercised the power of appointment in favor of his residuary estate and gave, devised, and bequeathed the entire residuary estate to his wife Minerva.[3]

In September 1971 Minerva, a Michigan resident, died intestate.

---

[1]Appellants include Dennis Sevegney's sister Melinda Ringuette, nieces Stella Desgrandchamp, Lorraine Lemp, and Lillian Ilves, nephews Lawrence, Francis, and Clarence Sevegney, and Archie Blair, grandnieces Claudette Applebay, Dolores Gill, Maxine Schenk, and Phyllis McCord, and grandnephew Thomas Sevegney. At the time of Minerva's death, no parents or issue of Dennis Sevegney survived.

[2]Archambeault's will conditioned the exercise of the power of appointment on the failure of Dennis to leave surviving issue: "As to the part held in trust for Dennis Sevegney, designated in subdivision (g) hereof, the income therefrom shall be paid to said Dennis Sevegney for and during the term of his natural life, and on his death the principal and unexpended income of said one-eleventh (1/11th) part shall be paid over to my said Trustee to the issue of said Dennis Sevegney then surviving, and in default of issue then surviving, as he may by Last Will and Testament provide, and in default of issue and Last Will and Testament, to his then heirs at law."
Dennis had no surviving issue at the time of his death.

[3]In his will Dennis declared: ". . . I have no issue surviving me and hereby appoint that my interest as provided for in the Will of Joseph Archambeault shall be and become a part of my residuary estate and be distributed as herein provided and I give, devise and bequeath the same as herein provided; . . . I give, devise and bequeath all the rest, residue and remainder of my estate of whatever name or nature and wheresoever the same may be situated, including what is mine to bequeath or devise under the power of appointment above referred to, to my wife, Minerva June Lobb Sevegney, to be hers absolutely and forever."

Minerva's relatives[4] began ancillary probate proceedings in California to administer the California property in her estate.[5]

Appellants entered the proceedings to claim an interest in the four parcels of real property by reason of Probate Code section 229, subdivision (a): "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was *separate property of a previously deceased spouse,* and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation." (Italics added.)

The court rejected appellants' claim and determined that respondents were entitled to the interest in the four parcels of real property under Probate Code section 225: "If the decedent leaves neither issue nor spouse, the estate goes to his parents in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to his brothers and sisters and to the descendants of deceased brothers and sisters by right of representation."

Appellants argue that for practical purposes Dennis possessed the critical incidents of ownership in a one-eleventh interest in the real property in that: he held the right to receive income from the property for life; he enjoyed the right to dispose of the corpus on his death; on his death the real property would become subject to administration in his estate (*Estate of Masson,* 142 Cal.App.2d 510, 512 [298 P.2d 619]; *Estate of Kuttler,* 160 Cal.App.2d 332 [325 P.2d 624]); creditors of his estate would be able to reach the real property to satisfy their claims (Civ. Code, § 1390.3, subd. (b)); the state would treat the property as his separate property for purposes of inheritance taxation (Rev. & Tax.

---

[4]Respondents include Minerva Sevegney's sisters Ebbite Wolkenhauer and Zelda Clay, brothers Howard, Richard, Granville and Robert Lobb, nephews Jack and Bryce Gribble, and niece Jane Stripling. Minerva left no surviving spouse, issue or parent at her death. Security Pacific National Bank, as administrator of the estate of Minerva Sevegney, is also a respondent.

[5]Ten items of personal property, including corporate stock and oil royalty interests, were also probated in California, but appellants do not challenge the determination of interests in that property. The probate court applied Michigan Law (MCLA § 702.80) in dividing the personal property among Minerva's relatives.

Code, § 13696). From this appellants conclude that the interest in real property had formerly been Dennis' separate property, and therefore it should revert to his heirs by reason of Probate Code section 229, subdivision (a). In the alternative, appellants argue that even if Dennis did not possess the property during his lifetime, he made it his by exercising the power of appointment in favor of his estate.

In opposition, respondents argue that under common law notions of property Dennis never had any claim to ownership in the four parcels of real property. Dennis' right to income from the trust give him no ownership in the trust property itself. (Civ. Code, § 863.) And the general testamentary power of appointment (Civ. Code, §§ 1381.2, 1381.3, subd. (a)) only made him an agent-trustee with respect to the one-eleventh interest in the four parcels of real property for purposes of disposing of the property by will according to the intent of his uncle. (*Estate of Baird,* 135 Cal.App.2d 333, 340 [287 P.2d 365]; see also *Estate of Rosecrans,* 4 Cal.3d 34, 38, fn. 4 [92 Cal.Rptr. 680, 480 P.2d 296].)

We are here presented with a conflict between theoretical and practical conceptions of *property* with respect to powers of appointment. Professor Powell in his treatise The Law of Real Property discusses this conflict (vol. 3, pp. 335-336, fns. omitted): "The creator of the power was known as the 'donor.' The recipient of the power was known either as the 'donee,' or as the 'appointor.' The person in whose favor a power had been exercised was called the 'appointee.' It can readily be seen that historically, the donee acted under the authority conferred upon him by the donor in selecting the appointee. Such action was a type of agency. Similarly, it can be readily realized that in making this selection the donee was exercising one of the most important prerogatives of ownership. By deciding upon the ultimate recipient of beneficial ownership the donee was exercising an incident of property ownership, namely, the power of disposition. The history of powers of appointment is a record of the interaction of these two approaches derived respectively from the laws of agency and of property. To the extent that the historically inescapable factor of agency was stressed it was clearly sound to say that the appointee takes from the donor rather than from the donee. To the extent that the fostering of credit or the other protections of third persons dealing with the donee require that stress be laid on the donee's approximation to ownership, the proprietary nature of the donee's interest has dominated the law. At any moment of time the law concerning powers of appointment consists of a blending of these two basic ingredients."

■ The issue at bench is whether the subject matter of a general testamentary power of appointment is a spouse's separate property within the meaning of Probate Code section 229, subdivision (a). On this issue we conclude that the traditional, theoretical view of property governs, that with respect to general testimonial powers of appointment their agency aspect preponderates over their proprietary aspect. As the court said in *Estate of Baird,* 135 Cal.App.2d 333, 340 [287 P.2d 365], " ' "[T]he appointee of the appointed property benefits not out of the estate of the donee of the power, but out of the estate of the donor. 'It is a recognized rule of the common law that a bequest which comes to a beneficiary through the exercise of a power of appointment or by reason of a failure of its exercise is a gift to the beneficiary from the creator and not from the donee of the power.' " . . . "A power of appointment is a delegation by the donor, in the disposition of his property, to the donee who does not become the owner and holds only as trustee.' " ' " (Citations.)

■ Under traditional notions of fixed estates in property, although two persons or entities may simultaneously exercise some of the incidents of ownership in a particular property, only one person or entity can be said to own the fee interest in the property at any given time. While the donee of the power under a general testamentary power of appointment may act as kingmaker, he can never become king himself. (Were the law to the contrary we would find ourselves back with the *Rule in Shelley's Case,* under which a life estate with testamentary power of appointment over the remainder becomes equivalent to a fee simple.) ■ We conclude that a donee has power over, but not property in, the subject matter of a general testamentary appointment.

During his lifetime Joseph Archambeault owned the fee in the four parcels of real property. On his death ownership of the fee in this property passed to a trust from which one-eleventh of the income was paid to Dennis for life. On Dennis' death ownership of a fee interest in one-eleventh of the property passed to Minerva pursuant to the general testamentary power of appointment in Dennis' will. Dennis, alive, never owned a fee interest in the property which appellants, his relatives, now claim.

The legal form followed by Dennis Sevegney in exercising his general testamentary power of appointment in favor of his wife, viz. appointment of his residuary estate as beneficiary of the trust and designation of his wife as the beneficiary of his residuary estate, did not create in him in death any greater interest in the property than he held in life. Dennis Sevegney's estate never became the holder of a fee interest in the

property, for the property vested directly·in his wife on his death. (*Estate of Reichel,* 28 Cal.App.3d 156, 159 [103 Cal.Rptr. 836]; Prob. Code, §§ 28, 300; Civ. Code, § 1386.2.)

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 12, 1975.